No. 19,927.

DOLLIE L. UDEY, *Appellant,* v. THE CITY OF WINFIELD, *Appellee.*

### SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Clerical Employees—Workmen's Compensation Act.* Clerical employees in the office of the city clerk are not employees of the city in conducting a light and water plant, as contemplated by section 6 of the workmen's compensation act. · (Laws 1911, ch. 218.)

2. SAME—*Assumption of Risk—No Recovery.* The evidence of the plaintiff showed that the character of the work of removing the pipe which fell on the deceased and the dangers incident thereto were apparent to him, and in attempting to perform such work in the way he did he was sufficiently at fault to bar a recovery. *Held*, the demurrer to such evidence was rightfully sustained.

,Appeal from Cowley district court; CARROLL L. SWARTS,. judge. Opinion filed February 12, 1916. Affirmed.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for the appellant.

*James A. McDermott,* of Winfield, for the appellee.

The opinion of the court was delivered by

WEST, J.: The widow of Alberta Udey brought this action for the benefit of herself and her children to recover damages for the death of her husband, alleging in substance that the defendant city owned, conducted and operated for profit an electric-light plant and waterworks system; that it had more than fifteen workmen continuously in its employment in that line of business and had not elected to come within the provisions of the workmen's compensation act (Laws 1911, ch. 218) ; that the deceased was in the employment of the defendant, and one Welfelt was the superintendent and chief engineer of the plaintiff; that on the 21st day of March, 1912, and for many years theretofore there was a cast-iron pipe about thirty feet long at the old plant which had been used as a conduit from the filter to the clear-water basin, and was suspended about two and one-half feet from the ground by being fastened at one end to the filter and at the other end to the clear-water basin; that the deceased was ordered by Welfelt to disconnect about ten feet of this pipe for use at the electric-light and water plant; that in order to disconnect such portion it was necessary to unbolt the rivets or screws in the joints of the pipes, which Udey attempted to do under such order; that in trying to disconnect the pipe and after a part had been disconnected such pipe was left, for want of due care, by the defendant, suspended in midair about two and one-half feet with only a fastening at one end and without any other prop or support; that it had been exposed and had become weak and corroded; "that the defendant was guilty of negligence, carelessness and want of due care in unbolting the rivets of said pipe without any props and supports, or any arrangements therefor, and by reason thereof it broke and fell upon Udey without any fault upon his part, and while in performance of duty, and so bruised and wounded him as to cause his death."

The answer admitted that the city had not elected to come within the provisions of the workmen's compensation act; de-

nied generally the allegations of the petition except as specifically admitted; alleged contributory negligence; that the deceased was foreman of the old water plant and had for many years known the condition of each and every part thereof; that if a portion of the pipe was left suspended it was the result of the work of Udey without the knowledge, direction or consent of Welfelt or any other servant of the city. The court sustained a demurrer to the plaintiff's evidence, from which ruling he appeals.

Section 46 of chapter 218 of the Laws of 1911 provides that it shall not be a defense to any employer who shall not have elected to come within such provisions that the employee either expressly or impliedly assumed the risk of the hazard complained of, or that he was guilty of contributory negligence, but such negligence shall be considered in assessing the amount of recovery.

It is contended that the defendant was within the terms of the act by reason of having fifteen persons in the employ of its electric-light and waterworks plant, and that therefore the ordinary defenses of assumption of risk and contributory negligence do not apply. Assuming, without deciding, that a municipal corporation like the defendant, if employing the requisite number of persons in such plant, should be deemed to be an employer within the meaning of the act in question, it must be held that the testimony failed to show that fifteen persons were thus employed. The number could not be completed without including mere clerical employees in the office of the city clerk. The testimony showed that the plant was located at the old fairgrounds, where there was a stone building, also equipment for operating the plant; that a bookkeeper and a stenographer at the city clerk's office performed the clerical duties, which included entries with reference to the light, water and street departments.

Section 6 provides that the act shall apply only to the employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural-gas plant, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain;

each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workmen engaged therein are inherent, necessary or substantially unavoidable.   The title of the act is:

"An Act to provide compensation for workmen injured in certain hazardous industries."

It is not within the letter or spirit of this statute that clerical employees like the clerk and stenographer in the city clerk's office should be included within the list of those engaged in the hazardous enterprise of operating an electric-light and water-works system.

Considerable argument has been directed to the proprietary character of the work involved, but as the city makes no claim of exemption on the ground of exercising governmental functions, that matter need not be considered.

This leaves one question:  whether or not, considering the case as an ordinary common-law action for damages, it can be said that the court erred in sustaining the demurrer to the evidence.   In other words, Did the evidence of plaintiff show or tend to show actionable negligence on the part of the city? The deceased was foreman of the water lines, had been foreman a long time, had had the running of the old plant, and was well informed as to the situation and condition.  It was attempted to be shown by a subsequent statement of the superintendent that the latter had stepped away to find some timber or boards to place under the pipe to hold it up, and when he returned he found that Udey was dead, but this was excluded as not part of the *res gestæ*.   From the evidence, we have only this situation: The pipe was suspended above the surface of the ground, and underneath was an excavation or ditch two and a half to three and a half feet deep; Udey undertook to remove a portion thereof without placing any supports thereunder; that he had an S wrench for the purpose of removing the taps from the bolts which held the sections of the pipe together; that a natural way to remove those on the under side would be to work in the ditch underneath, although by reaching over and around, the nuts could be loosened without getting

underneath the pipe; that Udey was found in the ditch crushed to death by a portion of the pipe which had fallen upon him; that it had broken off where it joined the flanges and the broken or largest end had fallen upon him, a part of the bolts from the flanges at the place where the pipe had broken having been removed; the wrench was in his jacket over his chest, not in his pocket, but sticking where it had been crushed in his clothing where the pipe was lying on him. No board or other material was seen near the place by which the pipe could have been supported. The foreman testified, among other things, that—

"At the time Udey was killed they were undertaking to take out a piece of the pipe to take to the present water works and install it there as a part of its equipment; that he desired to take something like seven feet of this pipe, and that it was to be taken between two joints, and that Udey was to commence on the eight inch pipe; that in order to do this it would be necessary to unbolt at the joints; that Udey was taken there by him for the purpose of unbolting these joints; that there was nobody there except Udey and himself, and that he was not present when the pipe fell."

He testified that it would have been possible for any one working there to put a board under the end of the pipe, as the piece they were working on had to be unbolted near the filter tub. A witness, H. B. Dix, testified that the bolts had all been removed from the flanges at the basin at the east end and that a part of the bolts had been removed from the flanges at the place where it broke and fell on the deceased. T. B. Myers, who had been superintendent of the old water plant, testified, among other things, that while theoretically it might not be necessary to get under the pipe, from a practical point of view he thought it would; that if he had been working there he would have thought the practical thing would have been to get under the pipe to loosen the under bolts, and that he thought it would be necessary; that it was necessary to shore up the pipe and keep it from falling into the ditch; that it was his judgment that it was best to shore this pipe up in the first instance in order to loosen or release the bolts; that Udey had some practical knowledge and might know what was necessary to be done in and about the work which he had been engaged in.

True, Udey was attempting to remove the pipe under the order or direction of the foreman Welfelt. But there is noth-

ing whatever to indicate that Udey did not have as full and complete a knowledge and comprehension of the nature of the work and the dangers incident thereto as Welfelt had. On the contrary, it appears that he was quite familiar with the situation, the dangers of which were apparent. It is clear that Udey did proceed to unbolt the pipe without its being supported so as to prevent its falling when it should come apart. But in order for the plaintiff to recover, some actionable negligence on the part of the city must appear—negligence which does not unavoidably involve contributory negligence or assumption of risk on the part of the deceased. In what way the body came to be in the ditch, whether by accident or design, we do not know, and verdicts can not rest on conjecture. (*Byland v. Powder Co.*, 93 Kan. 288, 144 Pac. 251, and cases there cited.) The rule that it is the duty of the master to provide a safe place to work does not apply to a place made dangerous by the very work being done. (*West v. Packing Co.*, 86 Kan. 890, 122 Pac. 1024.) And in attempting to remove the pipe without support the work necessarily became more and more dangerous as it progressed—a fact which must have been apparent to the deceased.

But aside from all this, if we assume or infer from the evidence that the death was caused by a fall of the pipe resulting from Udey's being put to work in a place unsafe because the pipe was not supported, and that in thus putting him to work the city through its superintendent was guilty of negligence, it is still inescapable that the danger was apparent to him as well as to the superintendent, that he was equally at fault, or sufficiently at fault, in proceeding without complaint and without taking measures to protect himself, to bar a recovery. (*Metz v. Railway Co.*, 90 Kan. 463, 135 Pac. 578; 2 M. A. L. p. 396.)

The judgment is therefore affirmed.