No. 20,561.

RINDA E. GRISWOLD et al., *Appellants*, v. THE CITY OF WICHITA, *Appellee*.

### SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*City Police Officer not Within Its Provisions.* The workmen's compensation act (Laws 1911, ch. 218, as amended by Laws 1913, ch. 216) does not apply to the case of a police officer of a city who is killed in the discharge of his duties.

2. SAME—*Police Officer not a "Workman" as Defined in the Act.* A police officer of a city of the first class is not a "workman" as defined by the compensation act.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed January 6, 1917. Affirmed.

*Earle Blake, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, for the appellants.

*James A. Conly,* and *J. A. Brubacher,* both of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J. : This action was brought under the workmen's compensation law to recover for the benefit of the family of a policeman, who was killed while in the discharge of his duty. The court sustained a demurrer to the petition and the plaintiffs appeal.

Frank Griswold, the deceased, was a captain of the police force of the city of Wichita; he was killed by a pistol shot fired by some person who had broken into a store building in the nighttime, and whom he was attempting to arrest. The amount sued for is $3600, the maximum amount of recovery under the

workmen's compensation act, in view of the salary or earnings of the deceased during the year preceding his death.

The sole question to be determined is whether this action can be maintained under the compensation act. The exact question has never been decided by this court. In *Udey v. City of Winfield,* 97 Kan. 279, 155 Pac. 43, the action was by the widow for the benefit of herself and children to recover damages for the death of her husband, who was killed while working in an electric light and water plant controlled and operated by the city for profit. The city had not elected to come within the provisions of the compensation act, but it was contended that it was within the terms of the act by reason of having fifteen persons in the employ of its light and waterworks department. In order to show that fifteen persons were thus employed, it was necessary to include mere clerical employees in the office of the city clerk. It was held that to include such employees was not within the letter or spirit of the statute, because they were not engaged in the hazardous enterprise of operating the light and waterworks system. In the opinion it was said:

"Assuming, without deciding, that a municipal corporation like the defendant, if employing the requisite number of persons in such plant, should be deemed to be an employer within the meaning of the act in question, it must be held that the testimony failed to show that fifteen persons were thus employed." (p. 281.)

The city in that case made no claim of exemption on the ground that in operating its electric light and water system it was exercising governmental instead of proprietary functions, and so the court found it unnecessary to determine that question.

The plaintiffs' contention is that the compensation law, as originally adopted (Laws 1911, ch. 218) has been broadened in its scope by the amendment of 1913, in which the legislature extended its application to "county and municipal work." Section 2 of chapter 216 of the Laws of 1913, so far as it applis to the question, reads:

"APPLICATION OF THE ACT: This act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas plant, *county and municipal work,* and all employments wherein a process requiring the use of any dangerous ex-

plosive or inflammable materials is carried on, which is conducted for the purpose of business, trade, or gain; each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workman engaged therein are inherent, necessary, or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen."

This section amended section 6 of the original act by the addition of the words "county and municipal work." Counsel for plaintiffs insist that the decision in the present case depends on whether the amendment is to be given a narrow or a broad construction by the courts. We have uniformly held it to be our duty to give to the compensation act a broad and liberal interpretation, for the purpose of carrying out its wise and beneficent purposes; but the court has also recognized its limitations in this respect. In *Menke v. Hauber,* ante, p. 171, 160 Pac. 1017, it was said in the opinion:

"This court has always recognized the obligation resting upon it to give to the compensation law a liberal construction in order to carry into effect the provisions of the legislature, but we have no right to extend its construction to cover enterprises and industries not within the scope and intent of the law." (p. 175.)

The precise contention of plaintiffs is that the original act was broad enough to include workmen employed in building and engineering work, whether the employer was a person, county or corporation, municipal or private; and therefore it is argued that when the legislature by the amendment of 1913 added the words *"county and municipal work"* the purpose must have been to extend the application of the law, and that by a liberal interpretation we should hold it was the intention to include all employees of the city whose work, for any reason, becomes especially dangerous. It may have been the intention of the legislature to remove any doubt that might exist as to the application of the act to county and municipal work "which is conducted for the purpose of business, trade or gain," provided the nature of the work is such as to render it especially dangerous and hazardous to life and limb of the workmen engaged therein. Whatever the purpose of the legislature in including the words "county and municipal work," we think it is clear that the construing sections 2 and 4 of the

act of 1913 together with the well known purpose and objects sought to be attained by the enactment of the compensation law, it was not the intention to extend the application of the law to the case of a policeman killed in the discharge of his duty. Section 4 of the act defines "workman" as follows:

" 'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, but does not include a person who is employed otherwise than for the purpose of the employer's trade or business."

The defendant is a city of the first class, governed by the commission act. The statute relating to appointive officers in cities of the first class under the commission form of government provides for the appointment of a captain of police and such assistants and other officers as the commissioners may deem necessary for the best interest of the city. The same section provides that "no such officer shall be appointed until his term and salary shall have been fixed by ordinance" (Gen. Stat. 1909, § 1304), and that the terms of all appointive officers shall expire with the term of office of the board appointing them. It has been held that a policeman in performing his duties is exercising the rights of sovereignty, and represents the state and not the city, inasmuch as the state requires the city to appoint him, and because his duties are those of a public nature. In *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490, it was said:

"The police officers of a city are not regarded as the servants or agents of the city; their duties are of a public nature; their appointment is made by the city as a convenient mode of exercising a function of government; their duties are to preserve the good order and provide for the safety of the people of the city." (p. 656.)

In *Haney v. Cofran,* 94 Kan. 332, 146 Pac. 1027, it was said in the opinion:

"There is no end of authority that a policeman is a public officer, (citing cases). . . . In many respects a policeman is a municipal officer, but in other and important respects the legislature and the courts have raised him out of the class of a mere subordinate or employee like a field man of a local department of health ,(*Jagger v. Green,* 90 Kan. 153, 133 Pac. 174), or a cell-house man at the penitentiary (*Jones v. Botkin,* 92 Kan. 242, 139 Pac. 1198)." (p. 334.)

The primary purpose in the enactment of the compensation act has been considered in former decisions. In *McRoberts v. Zinc Co.,* 93 Kan. 364, 144 Pac. 247, it was said:

"In the enactment of the compensation law the legislature recognized

that the common-law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific and unjust, and therefore a substitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation and place the burden of accidental injuries incident to such employments upon the industries themselves, or rather upon the consumers of the products of such industries." (p. 366. See, also, *Menke v. Hauber,* ante, p. 171, 160 Pac. 1017.)

The theory is that the employer who obtains a profit from the labor of workmen may very easily add to the cost of the manufactured goods a limited amount to cover the cost of compensation to the workmen injured in certain hazardous employments, and thus, without loss to himself, the burden may be distributed upon the consumers which constitute the public. Many good reasons might be suggested for including within the scope of the act workmen employed in hazardous enterprises by cities engaged in conducting a business for profit, as electric-light or waterworks plants, because a city, like any private individual engaged in trade or business, could pass on to the public at large the burden by adding to the cost of the service. But where a city is engaged merely in the exercise of its governmental functions we think it clear that the workman, no matter how hazardous his employment, would not come within the spirit and purpose of the compensation act any more than the clerks and stenographers in the case of *Udey v. City of Winfield,* supra. So that even though a policeman be regarded as a workman in the employ of the city, and notwithstanding the performance of his duties places him at times in a dangerous and hazardous situation, still, the employer, the city, is not engaged in trade or business, and therefore a policeman is not within either the spirit or letter of section 2 of the act, which limits its application to persons employed for the purpose of the employer's trade or business.

In operating electric-light and power plants and waterworks systems, cities are engaged in the exercise of their proprietary functions, while in enforcing the laws of the state against crime they are exercising a purely governmental function. This proposition is so elementary as not to require the citation of authority.

One or two cases are cited from other courts construing compensation acts the language of which differs materially from

our statute. It is not contended that any of the cases are directly in point, and a discussion of them would be of no benefit.

There may be, as suggested in the brief of the defendant, good reasons why a policeman, sheriff or other police officer, in the discharge of his duties should be protected; but this presents a question for the legislature and not for the courts. The legislature might see fit to provide a pension for the family of a policeman killed in the discharge of his duties. It could not do so under the compensation law, without a very wide departure from the theory and purpose upon which that law was enacted, as expressly declared in the act itself.

The judgment sustaining the demurrer to the petition must be affirmed.