No. 21,260.

G. S. GRAY, *Appellee*, v. THE BOARD OF COUNTY COMMISSION-
ERS OF THE COUNTY OF SEDGWICK, *Appellant*, et al.

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*Its Purpose*. The general purpose of the workmen's compensation act is to provide for compensation to workmen injured in hazardous employments carried on for the purpose of business, trade or gain.

2. SAME—*County Not "Engaged in Trade or Business."* A county in resurfacing a county road is not engaged in trade or business within the terms or operation of the workmen's compensation act.

Appeal from Sedgwick district court, division No. 2; THOMAS C. WILSON, judge. Opinion filed June 9, 1917. Reversed.

*Ross McCormick,* county attorney, *Glenn Porter,* and *H. C. Castor,* both of Wichita, for the appellant.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff was employed by the county commissioners to work with his team hauling gravel for use on a county road in Sedgwick county, which the board and engineer were grading and surfacing. While thus engaged his foot slipped and was caught under the wheels of his loaded wagon and injured. He sued the county under the workmen's compensation act. A demurrer to the petition was overruled, and the county appeals, averring that it was not an employer engaged in trade or business within the terms of the statute.

The general scheme of this legislation has been to enable those engaged in operating hazardous industries to compensate workmen injured therein and add the cost to the price of the product, thus extending the burden to the consumer.

Assuming, without deciding, that hauling gravel from the gravel pit to place on a public highway is within the act on the theory that the employment is "on, in or about a mine or quarry" (Gen. Stat. 1915, § 5903, subdiv. *c,* defining "Mine," subdiv. *d,* defining "Quarry"), the question arises as to whether the county was an employer engaged in trade or business. Section 5900 provides:

"This act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas plant, county and municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain."

This section seems to cover, first, employment in the course of the employer's trade or business in certain places or kinds of work, and, second, all employments dangerous in the way mentioned and conducted for the purpose of business, trade or gain. The words "county and municipal work" were added by the legislature of 1913, and if applied only to the case of one who contracts to do county or municipal work and employs workmen therein, are clear enough. But running through the entire language are the two ideas, not only of an employment in certain classes of work but an employment therein by an employer in the course of his trade or business conducted for a profit. The provisions of the statutes of various other states are quoted showing that in many of them the clear use of terms has left the matter as to municipalities free from doubt, but they do not aid much in the construction of the statute before us.

As applied to this case the amended provision may be thus read:

"This act shall apply only to employment in the course of the employer's trade or business on, in or about . . . county and municipal work, and all employments wherein a process . . . is carried on, which [employment] is conducted for the purpose of business, trade or gain; each of which employments [all those previously mentioned] is

hereby determined to be especially dangerous  . . .  . and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen."

If engaged in county work in the course of the employer's trade or business for profit the workman is within the statute, whether the work is actually hazardous or not, such work being deemed and declared dangerous. Agricultural pursuits and employments incident thereto are declared nonhazardous and exempt. In amending the section it was the intention to add county and municipal work and exclude agricultural work, thus changing the kinds of employment to which the act was to apply. It was a change in employments, not in employers. Before the amendment a contractor doing county or municipal work was not within the statute unless engaged in doing work actually hazardous. Now such work is in effect made hazardous by being declared so, and brought within the operation of the act.

The definition of employer was left as before, to include "any person or body of persons corporate or incorporate, and the legal representatives of a deceased employer or the receiver or trustee of a person, corporation, association or partnership." (Gen. Stat. 1915, § 5903, subdiv. *h.*) But persons corporate or incorporate, in order to be employers within the act, must employ the workmen in the course of their trade or business, terms which do not naturally or properly apply to a county in the administration of its affairs. "Business" has been held to be synonymous with "calling," "occupation" or "trade," and defined as "any particular occupation or employment engaged in for a livelihood or gain." (*Topeka v. Jones,* 74 Kan. 164, 86 Pac. 162.)

Under the provisions of section 8765 of the General Statutes of 1915 the county engineer or township trustee was required to keep certain roads in repair and authorized to enter upon adjoining land and carry away gravel, the expense thereof to be allowed by the highway commissioners and paid by the board of county commissioners when such matter is used upon a county or state road. Counsel, in his brief, asks:

"When Sedgwick county undertook to operate a sand pit and to build or resurface the North Lawrence avenue road by direct employment of labor, instead of by contract, the county doing the identical work that a

contractor is now doing on the South Lawrence avenue road, was it exercising a governmental function?"

In *Pfefferle v. Comm'rs of Lyon Co.*, 39 Kan. 432, 18 Pac. 506, it was said of counties:

"They are usually denominated *quasi* corporations, and their principal functions are governmental and political, and not private or of a strictly corporate character. Counties are principally mere political subdivisions of the state, mere instrumentalities of the state government, brought into existence merely for the purpose of aiding and assisting the state in promoting justice, in preserving peace, quiet and good order in the state, and of promoting the welfare and happiness of the citizens thereof; and these objects are the ones which counties are designed to subserve when they are authorized to build, own, and keep county jails. These objects do not partake at all of a private character; and they are not engaged in as business transactions, nor for the purpose of increasing the wealth of the county as an organization." (p. 436.)

In *Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55, it was held that counties are mere auxiliaries to the state government and partake of the state's immunity from liability, and are in no sense business corporations. In that case damages were sought for the abandonment of a highway and the removal of a bridge. In the opinion it was said that since the organization of the state it has been the duty of counties and townships to maintain public roads and bridges. In *Shawnee County v. Jacobs*, 79 Kan. 76, 99 Pac. 817, it was held that a county engaged in building a bridge upon a public highway acts as a subdivision of the state government, and is not liable for the negligent performance of such work unless expressly made so by statute. In the opinion it was said:

"The duty of building bridges and maintaining the public highway has devolved upon the counties and townships of this state since its organization. In the performance of this duty the county acts as an agency of the state, and is no more liable for its acts while so engaged than the state itself would have been if doing the same work." (p. 81.)

In *Griswold v. City of Wichita*, 99 Kan. 502, an action to recover for the death of a policeman killed in the discharge of his duties, in holding that the deceased was not a workman as defined by the compensation act, and in speaking of the amendment of 1913 adding the words "county and municipal work," it was said: "It may have been the intention of the legislature to remove any doubt that might exist as to the application of the act to county and municipal work 'which is conducted for

the purpose of business, trade or gain,' provided the nature of the work is such as to render it especially dangerous and hazardous to life and limb of the workmen engaged therein." (p. 504.)   It was also said that the theory of the act is that the employer may without loss to himself distribute the burden upon the consumers, which constitute the public.

"Many good reasons might be suggested for including within the scope of the act workmen employed in hazardous enterprises by cities engaged in conducting a business for profit, as electric-light or waterworks plants, because a city, like any private individual engaged in trade or business, could pass on to the public at large the burden by adding to the cost of the service.  But where a city is engaged merely in the exercise of its governmental functions we think it clear that the workman, no matter how hazardous his employment, would not come within the spirit and purpose of the compensation act any more than the clerks and stenographers in the case of *Udey v. City of Winfield*, 97 Kan. 279.  So that even though a policeman be regarded as a workman in the employ of the city, and notwithstanding the performance of his duties places him at times in a dangerous and hazardous situation, still, the employer, the city, is not engaged in trade or business, and therefore a policeman is not within either the spirit or letter of section 2 of the act, which limits its application to persons employed for the purpose of the employer's trade or business."  (p. 506.)

The distinction between cities and counties was pointed out in *Beach v. Leahy, Treasurer*, 11 Kan. 23, and referred to in *Fisher v. Township*, 87 Kan. 674, 677, 125 Pac. 94, and *Haddock v. McDonald*, 98 Kan. 628, 159 Pac. 402.   Cities have been held liable for certain acts or omissions from which counties are relieved, and in view of the unvarying rule to relieve the latter from all liability not expressly imposed by statute it would be a departure to hold the defendant county liable.

In *Udey v. City of Winfield*, 97 Kan. 279, 155 Pac. 43, and *Knoll v. City of Salina*, 98 Kan. 428, 157 Pac. 1167, the question before us was not raised.   It is now presented for the first time.   It must be held that the county was not engaged in trade or business so as to bring this case within the application of the compensation act.

The order overruling the demurrer to the petition is reversed, and the cause remanded with directions to sustain such demurrer.

JOHNSTON, C. J., dissents.