WANIE S. FAHLER, as Administratrix of the Estate of Leo S. Fahler, Deceased, Respondent, v. CITY OF MINOT, a Municipal Corporation, Appellant.

(194 N. W. 695.)

**Master and servant — policeman held an "employee" within compensation act; "employment."**

1. Section 2 of the Workmen's Compensation Act (Sess. Laws 1919, chapter 162), which defines "employment" as including employment by the state and all political subdivisions, and which defines "employee" as meaning every person engaged in a hazardous employment under any appointment or contract of hire, is construed and *held* to embrace policemen employed by a city.

**Master and servant — noncomplying employer liable under compensation act regardless of fault.**

2. Section 11 of the same act, which provides that employers who fail to comply with the provisions requiring payment of premiums shall not be entitled to the benefits of the act during the period of noncompliance "but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment," etc., and that they shall not avail themselves of the defenses of the fellow-servant rule, assumption of risk and contributory negligence, is construed in the light of cognate provisions and of the policy manifested by the entire act, and it is *held* that a noncomplying employer is liable to an injured employee within the act, or to his personal representatives in case of death, where the damages were suffered by reason of injuries sustained in the course of employment, regardless of questions of fault.

**Master and servant — city not complying with compensation act held liable for death of policeman.**

3. Where a city had not complied with the Workmen's Compensation Act and a policeman employed by it was killed in the course of his employment, the city is liable in damages to the personal representatives of the deceased on account of the death so occurring.

Opinion filed June 27, 1923.

Workmen's Compensation Acts, C. J. § 39 p. 49 n. 52; § 157 p. 136 n. 49; § 158 p. 136 n. 57; § 159 p. 137 n. 65.

Note.—On applicability of compensation acts to policemen, see note in L.R.A. 1918F, 191.

On right of firemen and policemen to recover under workmen's compensation acts, see notes in 10 A.L.R. 201; 28 R. C. L. 722; 4 R. C. L. Supp. 1838.

Appeal from the District Court of Ward County, *Moellring,* J. Affirmed.

*John J. Coyle* and *McGee & Goss,* for appellant.

"The compensation acts are a compromise between employers and employees." 28 R. C. L. 713, § 2.

"Both had suffered under the old system. The employers by heavy judgments of which half was opposing lawyer's booty; the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay some claims in the future where in the past there had been no liability. The servant was willing, not only to give up trial by jury but to accept far less than he had often won in court, providing he was sure to get a small sum without having to fight for it." 28 R. C. L. 713.

"The theory of the compensation acts is that the whole cost and expense of conducting the business, including compensation for injuries to employees, is added to the cost of the articles that are produced and sold; and hence, in the long run, such costs and expenses are borne by the consumer of the articles produced." Chandler v. Ind. Com. (Utah) 184 Pac. 1020, 8 A.L.R. 930. Corpus Juris Pamphlet on Workmen's Compensation Acts, § 5, p. 8; Griswold v. Wichita (Kan.) 152 Pac. 276, L.R.A.1918F, 187.

"Whether or not a county, city, or other municipal district or political subdivision is within the operation of the compensation statute, depends primarily upon the language of the particular statute involved, and also upon the particular work in which the employee was engaged at the time of his injury." Hochspeier v. Ind. Board of Illinois, 116 N. E. 121, L.R.A.1918F, 227.

"A sheriff is not an employee of the state within the meaning of the Workmen's Compensation Act which renders the state liable for injuries to its employees." Sibley v. State (Conn.) 96 Atl. 161, L.R.A. 1916C, 1087.

"A sheriff is not an employee of the county within the meaning of California Compensation Act." Mono County v. Ind. Com. 175 Cal. 752, 167 Pac. 377.

"A captain in the fire department of the city of Saginaw is, in the contemplation of the Michigan Compensation Act, an official and not entitled to compensation for injuries received while acting in the scope

of his employment." McNalley v. Saginaw, 163 N. W. 1015; Devney's Case, 223 Mass. 270, 111 N. E. 788; White's Case, 116 N. E. 481.

Nor is an election officer an employee within the California act, and covered by it. Los Angeles v. Ind. Com. 169 Pac. 270.

"Where under the statute, an employer must employ workmen in hazardous employment, which in turn must be carried on for pecuniary gain, the state, although included in the meaning of the word, employer, must, in order to be within the provisions of the compensation act, be employing workmen in hazardous occupations for pecuniary gain, in like manner as other employers." Corpus Juris Pamphlet, page 46, under § 37, citing Allen v. State, 160 N. Y. Supp. 85.

"While it is conceded by all that the Workmen's Compensation Acts are to be given a liberal construction, some courts have invoked a rule that general legislation is intended primarily for the subjects and not for the sovereign, and that the rules of statutory constructions requiring investigation of the intent or purpose of the legislative enactment is to be conducted subject to the presumption that law-makers intended to legislate on the rights and affairs of individuals and that the state or the public will not be deemed within the purview of such enactment unless expressly named or included by fair implication. Again, a sovereign state is not bound at all to compensate an individual employee for injuries sustained while in its service and no right of recovery in view of such employment exists except by statute. Accordingly, the compensation acts are held as inclusive of the state as an employer to be at derogation of its sovereignty and should be construed strictly in such manner if possible as to preserve to the state its nonliability for injuries to those in its service." 28 R. C. L. 729, § 16.

"Some of the modern workmen's compensation acts especially include municipal employees among those entitled to claims and benefits. These laws are generally given a liberal construction, but it is necessary to refer to the law of any particular state to determine to the extent to which these laws apply to some municipal employees for the laws are by no means uniform. It would seem that those employees engaged in the performance of the governmental functions would not be covered by the law unless the intention to include them was clearly expressed in the law." White, Negligence of Mun. Corp. § 38, p. 64; Fassig v. State, 116 N. E. 104.

"It will be observed that the employee of such an employer (one who has not insured under the compensation act and paid his premiums) has two remedies and he *must elect which one he will* pursue. *He cannot have both.* He may sue his employer as at common law and in that suit he is permitted to recover whatever damages he is able to show he has sustained; or he may, in lieu of such suit, apply to the commission for *compensation* under the act. In the latter event, the board is required to proceed in like manner as in other claims." Hunter v. Colfax Coal Co. 154 N. W. 1037, Ann. Cas. 1917E, 803.

*F. B. Lambert* and *E. R. Sinkler,* for respondent.

A party cannot both demur and answer and when he answers he waives his demurrer. Pierson v. Minnehaha (S. D.) 128 N. W. 616.

If a defendant answers after demurrer is filed he waives his demurrer. For a long line of decisions supporting this see 39 Am. Dig. Cent. ed. col. 1822.

If after demurrer the defendant pleads he waives the demurrer. 16 Am. Dig. Dec. ed. p. 417.

"The contemporaneous and practical construction of the statute by the industrial commission, an administrative tribunal whose duty it is to carry it into effect, is entitled to great respect. Though not absolutely controlling, it is entitled to the most respectful consideration and ought not to be overruled without cogent reasons." Ginnochio v. Hydraulic Pressed Brick Co. 260 Fed. 564.

Webster's New International Dictionary defines "business" to be:

"That which busies, or engages time, attention or labor, as a principal serious concern or interest. A constant employment; regular occupation; work; as, the business of life; business before pleasure. Any particular occupation or employment habitually engaged in for livelihood or gain. A particular subject of labor or attention; a temporary or special occupation or concern."

"This word implies everything about which a person can be employed." People v. Commissioners, 23 N. Y. 244; Hall v. Sibisa (La.) 25 So. 141; Dunn v. People, 45 Ill. 403; United States v. Morris (N. C.) 25 Fed. Cas. 1211–14; Guthrie v. Cameron (Okla.) 41 Pac. 637.

"Compensation act is to be liberally construed." Frank v. Industrial Commission, 179 N. W. 740.

"In very early times there was no occasion to discuss the essential elements of a tort or wrong. *Wrong was then not essential to liability.* It was enough that the defendant's conduct, *although perfectly harmless* had occasioned harm to the plaintiff. Later it began to be suggested that in certain instances (in certain classes of cases) there was no liability unless there was fault." 30 A.L.R. 248; 27 A.L.R. 239; 22 A.L.R. 99; 59 U. Pa. L. Rev. 309; Pollock & M. History of English Law, 2d ed. 54.

"The early law asked simply did the defendant do the physical act which damaged the plaintiff. The law of to-day, except in certain cases based on public policy, asks the further question, was the act blameworthy." 30 A.L.R. 254.

"The employment creates a status involving relative rights and obligations, and it is properly for the legislature, acting within the bounds of fairness and reason, to determine the nature, extent, and application of those rights and obligations. If the lawmaking body determines that one of the incidents of that relation shall be that the employer must compensate his employee for an accidental injury received in the service, *an enactment to that end is neither arbitrary nor outside the scope of legislative authority.*"

"Admitting, however, that the compensation acts do create *liability without fault* the courts have uniformly held this to be no objection to their validity." 28 R. C. L. 752.

"The employee is declared to be entitled to the benefit of the statute, *regardless of negligence,* actual or imputed, on the part of the employer. . . . Under the compensation act, the issue is as to whether the injury arose out of the employment." 28 R. C. L. 788. Arizona Copper Co. v. Hammer, 250 U. S. 400, 63 L. ed. 1058; O'Donnell v. Heimann, 133 N. W. 208; City of Milwaukee v. Miller, 144 N. W. 188.

"The provisions of this section relate to actions for damages in the *civil courts* and are not applicable to proceedings before the industrial commission, under G. C. §§ 1465–74." Boddinger v. Champion, vol. 1, No. 7 Bul. Ind. Comm. 70; Skinner v. Stratton, vol. 1, No. 7 Bul. Ind. Comm. 103.

"In an action for damages an allegation that the defendant employs five or more workmen and that he has not contributed to the state insurance fund is proper and will not be stricken from the petition." Geiger

v. Brewing Co. 16 O. N. P. (N. S.) 445; Schwartz v. Telephone Co. 16 O. N. P. (N. S.) 129; Chamberlain v. Lukenheimer Co. 16 O. N. P. (N. S.) 614.

"In proceedings before the industrial commission under this section it is not necessary that the claimant should allege or prove negligence on the part of the employer or that the employer was guilty of any tort whatever." Kennedy v. Railway, 18 O. N. P. (N. S.) 526.

"A company having failed to pay its premium into the state insurance fund prior to the death of an employee injured in the course of employment is not entitled to the protection of the act and is not released from liability under this section." 2 Opinions of Atty. Gen. 1915, 1128.

"A statute is not invalid as conferring unequal privileges and immunities which abolishes the doctrine of assumption of risk and fellow servant in actions to hold employers liable for personal injuries to their servants in cases where employers refuse to take advantage of the act, but preserves them intact to those who come under the law." Borgnis v. Falk Co. 147 Wis. 327, 133 N. W. 209, 37 L.R.A.(N.S.) 489.

BIRDZELL, J. This is an appeal from an order overruling a demurrer to a complaint. The complaint alleges that Leo S. Fahler, while employed by the defendant city as a policeman and while engaged in the performance of his duties as such, met his death while attempting to arrest one Avery Erickson; that the defendant city and Fahler, as its peace and police officer, were subject to the provisions of chapter 162 of the Session Laws for the year 1919 (the Workmen's Compensation Law), but that the defendant city, in violation of the law and of its duty, failed to comply with the provisions of the law, and especially §§ 6 and 7 respecting the payment of premiums, and that, being in default, the defendant is not entitled to the benefit of the act during the period of noncompliance and is liable for all damages sustained through injury to or death of its employees in the course of employment. The demurrer presents two questions of law: first, Is a policeman an employee within the Workmen's Compensation Act? If so, the second question arises, namely, whether the city, not having complied with the act, is liable in damages to the legal representatives of a deceased

employee killed while acting in the course of his employment though through no fault of the city or of anyone acting on its behalf.

Section 2 of chapter 162, Session Laws of 1919, defines certain terms which must be taken into consideration in determining whether or not a police officer is an employee within the Compensation Act. "Employment," says § 2, "includes employment by the state and all political subdivisions thereof, and all public and quasi-public corporations therein, and all private employments.

" 'Hazardous employment' means any employment in which one or more employees are regularly employed in the same business, or in or about the same establishment, except agriculture and domestic service, and any common carrier by steam railroad.

" 'Employee' means every person engaged in a hazardous employment under any appointment or contract of hire, or apprenticeship express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding any person whose employment is both casual and not in the course of trade, business, profession or occupation of his employer.

" 'Employer' means the state and all political subdivisions thereof, and all public and quasi-public corporations therein, and every person, partnership, association and private corporation, including any public service corporation, and the legal representative of any deceased employer, or the receiver or the trustee of a person, partnership, association or corporation, carrying on a hazardous employment.

" 'Injury' means only an injury arising in the course of an employment, including an injury caused by the wilful act of a third person directed against an employee because of his employment, but shall not include injuries caused by the employee's wilful intention to injure himself or to injure another. If the employer claims an exemption or forfeiture under this section the burden of proof shall be upon him."

In this connection it may be well to notice also Comp. Laws 1913 § 3783 which names the officers of cities incorporated under the commission form of government, as is the city of Minot. Among other officers enumerated is that of chief of police and "one or more policemen." An exhaustive argument is made in the brief of the appellant, the purpose of which is to demonstrate that a policeman is an officer and not an employee within the Workmen's Compensation Act. In view of the

statute last referred to (§ 3783) and of numerous decisions to the effect that a policeman is an officer, this much of appellant's argument may be deemed conceded for the purpose of this opinion; so, starting with the premise that a policeman is an officer, we must then inquire whether or not he is an employee within the Workmen's Compensation Act. It will be noted in the above quotations from that portion of the law devoted to the definition of terms, that there is an evident tendency toward generalization in definition rather than restriction. For instance, employment is defined to include employment by the state, by political subdivisions and by quasi-public corporations and private employments, thus apparently leaving no room to infer that *any employment* was to be excluded. The term 'hazardous employment" is defined in similar broad terms to include all employments where one or more employees are regularly employed, excepting only agriculture, domestic service and common carrier by steam railroad. Similarly, "employee" is defined as every person engaged in a hazardous employment under any *appointment, contract of hire* or apprenticeship express or implied, oral or written, etc., thus signifying by the use of the term appointment that one may even sustain the relation of employee in the absence of any contractual relation existing between him and his employer. These references will suffice to emphasize a distinction which, in our judgment, is apparent on the face of the law under consideration when compared with other acts in our sister states where it has been held that policemen were not workmen or employees within the meaning of their compensation laws.

Perhaps the strongest and most persuasive authority that has been brought to our attention in this connection is that of Mann v. Lynchburg, 129 Va. 453, 106 S. E. 371. In the act of Virginia which was under consideration in that case, employers were defined to include the state and any municipal corporation within the state or any political subdivision thereof, and the term "employee" was defined to include "every person . . . in the service of another under any contract of hire or apprenticeship written or implied." The court, in construing this language, said:

"The act, as its title shows, relates to industrial accidents, and its well-known purpose was to substitute for the unsatisfactory common-law remedies a speedier and simpler and more equitable form of relief for

personal injuries sustained by persons engaged in hazardous occupations. It would seem clear from the history and purposes and general provisions of the act that the Legislature did not have in mind as beneficiaries any other persons than such as are commonly understood as falling within a contractual relationship of master and servant. It often happens that cities and towns employ large forces of men in connection with municipal undertakings, such as the construction of sewers, the building of streets, the operation of rock quarries, and other similar and more or less hazardous occupations akin to those undertaken by individuals and industrial corporations. The legislature undertook to make an improvement upon the remedies hitherto existing in cases of employees receiving personal injuries, and who might or might not, according to the particular facts of the case, have a cause of action against the employer on the ground of negligence or breach of duty, and manifestly the idea was that this remedy should be provided for those who theretofore stood in such a relationship as that there might be in cases of negligence a liability on the employer. Griswold v. Wichita, 99 Kan. 502, L.R.A.1918F, 187, 189, 162 Pac. 276, Ann. Cas. 1917D, 31. The case of a city policeman does not, as we think, fall within the reason and purpose of the act, and this conclusion is greatly strengthened by the language which the legislature used in its enactment.

"It is no longer open to question in this state that a policeman is a public officer. See Burch v. Hardwicke, 30 Gratt. 24, 32 Am. Rep. 640; Smith v. Bryan, 100 Va. 199, 40 S. E. 652; Sherry v. Lumpkin, 127 Va. 116, 102 S. E. 658. And this is the holding generally in other states. See Blynn v. Pontiac, 185 Mich. 35, 151 N. W. 681, 683; Griswold v. Wichita, supra. The act in question, as we have seen, is limited to persons in service of the state or city under a contract of hire. A public officer does not perform his duties under contract, express or implied, but by virtue of the law creating the office. His compensation is a matter of statute or ordinance, and does not depend upon the amount or value of the services performed, but is incident to the office. Unlike an employee working under contract, an officer acquires no vested right to have the office continued during the time for which he is elected or appointed, since the authority creating the office may abolish the same during the term of the incumbent, or change the compensation and the duties to be performed. The following authorities may be cited as suf-

ficient in support of the foregoing propositions: Booker v. Donohoe, 95 Va. 359, 363, 28 S. E. 584; Nichols v. MacLean, 101 N. Y. 526, 533, 54 Am. Rep. 730, 5 N. E. 347; Mechem, Pub. Off. §§ 463, 855; United States v. Hartwell, 6 Wall. 385, 393, 18 L. ed. 830, 832; Hall v. Wisconsin, 103 U. S. 5, 26 L. ed. 302."

In arriving at this conclusion the Virginia court relied upon the persuasive decision of the supreme court of Connecticut in the case of Sibley v. State, 89 Conn. 682, L.R.A.1916C, 1087, 96 Atl. 161, where a similar statute was considered in its application to a sheriff. "Employee" was defined in the Connecticut act to mean any person who has entered into, or works under, any contract of service or apprenticeship with an employer. In a well considered opinion the Connecticut court distinguished, for the purpose of applying the act, between a person employed under a contract of service and an officer who was exercising for the public good a portion of the sovereign power of the state and for which he was entitled to receive the salary attaching to the office. Persuasive as are these authorities and similar ones coming to a like conclusion under different acts (Blynn v. Pontiac, 185 Mich. 35, 151 N. W. 681, 8 N. C. C. A. 793; Griswold v. Wichita, 99 Kan. 502, 162 Pac. 276, L.R.A.1918F, 187, Ann. Cas. 1917D, 31; Rooney v. Omaha, 104 Neb. 260, 177 N. W. 166; Ryan v. New York, 228 N. Y. 16, 126 N. E. 350; Chicago v. Industrial Commission, 291 Ill. 23, 125 N. E. 705), we are of the opinion that our law does not admit of a like construction. The pertinent sections of our law are, in our opinion, more analogous to the Minnesota act (Minn. Gen. Stat. 1913, § 8230), which reads as follows:

(Employee shall be construed to mean) "Every person in the service of a county, city, town, village or school district therein, under any appointment or contract of hire, express or implied, oral or written; but shall not include any official of any county, city, town, village or school district therein, who shall have been elected or appointed for a regular term of office, or to complete the unexpired portion of any regular term."

This act, it will be noticed, contains the same language as the North Dakota law in prescribing the basis of the protected relationship to be employment *under any appointment or contract of hire*. The second member of the sentence, by specifically excepting the officers who are

not to be included, gives a clear indication that officers are embraced within the relationship defined in the first clause. A policeman in the city of Duluth was held to be within the protection of the Minnesota statute. State ex rel. Duluth v. District Ct. 134 Minn. 26, 158 N. W. 790. Also, a fireman, State ex rel. Duluth v. District Ct. 134 Minn. 28, 158 N. W. 791, Ann. Cas. 1918B, 635. The Illinois and Michigan acts are similar to the Minnesota act, except that in them all officials of the state and of the political subdivisions are expressly excluded and policemen are held officials within the exception. Chicago v. Industrial Commission and Blynn v. Pontiac, supra.

Inasmuch as a contractual relationship does not appear to have been made the controlling element in the definition of employee covered by our act, and, moreover, inasmuch as the act expressly recognizes an employment as being created through *appointment,* we are of the opinion that a policeman is an employee of a city within the meaning of § 2 of the Workmen's Compensation Act. See McCarl v. Houston, 263 Pa. 1, 106 Atl. 104.

This brings us to the question as to whether or not the city, not having complied with the act, is liable in damages to the legal representatives of its deceased employee. Section 1 of the act, chap. 162, Laws of 1919, contains a preamble declaring that the prosperity of the state depends in a large measure upon the well-being of its wage workers and that, therefore, for workmen injured in hazardous employments and their families and dependents "sure and certain" relief is provided "regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as provided in this act; and it is further declared that civil actions and causes of action for personal injuries and the jurisdiction of the courts over such causes are abolished except as in the act provided."

Section 11 provides as follows:

"Employers subject to this Act, who shall fail to comply with the provisions of sections six and seven hereof, shall not be entitled to the benefits of this Act during the period of such noncompliance, but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injuries,

and in such action the defendants shall not avail himself or itself of the following common law defenses:

"The defense of the fellow-servant rule, the defense of the assumption of risk or the defense of contributory negligence.

"And such employers shall also be subject to the provisions of section eight.

"Any employee whose employer has failed to comply with the provisions of sections six and seven hereof, who has been injured in the course of his employment, wheresoever such injury has occurred, or his dependents in case death has ensued, may, in lieu of proceedings against his employers by civil action in the court, file his application with the workmen's compensation bureau for compensation in accordance with the terms of this act, and the Bureau shall hear and determine such application for compensation in like manner as in other claims before the bureau; and the amount of the compensation which said bureau may ascertain and determine to be due to such injured employee, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the Bureau;"

Further provision is made to the effect that if such amount is not paid, it will constitute a liquidated claim for damages recoverable with penalty. Elsewhere in the act (§ 7) all employers are required to pay annually into the workmen's compensation fund the amount of premium fixed by the Bureau, and upon default (§ 8) the premium is made collectible by civil action in the name of the people.

The exact question presented here, under the facts pleaded, is whether or not a city, against which there existed no common law liability to respond in damages, is chargeable under the Workmen's Compensation Act on account of its failure to comply with the act. Does § 11, which says that noncomplying employers "shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injuries," give a right of action where none would have existed at the common law. The state and its political subdivisions, employing officers or servants in carrying out their governmental functions, were not regarded as owing any duty to such employees for the neglect or violation of which they could be held in a

civil action, even one based on negligence. The employee bore all the risk of personal injury occurring in the course of the public employment in a governmental capacity.

On the other hand, a private employer was regarded in law as owing certain duties to employees regarding a safe place to work, safe appliances, the exercise of care in selecting fellow servants, etc. Where this duty was disregarded resulting in injury to the employee, there was a liability for the damages. The liability, in legal theory at least, was predicated upon the fault of the employer consisting in the failure to perform a duty which he was regarded as owing to the employee. This legal conception of liability resulted practically in visiting the consequences of injuries occasioned through the normal risks of an employment upon the employee, compensation, if any, for the assumption of such risks being presumably paid in advance through the fixing of the wages. Whether or not this presumption is more or less than fiction need not concern us here; the fact remains that compensation to the employee for injury was predicated upon a breach of duty and if he was unable to establish that a duty had been violated he was without remedy.

This basis for liability to compensate for injuries invited the defenses commonly expressed as the fellow-servant rule, assumption of risk and contributory negligence, all of which are predicated upon the idea that, though there may have been a breach of duty owing to an employee, he cannot recover if his injury were occasioned by the negligence of a fellow employee, through some risk that he should normally have contemplated, or, leaving aside the comparative negligence rule, if his own negligence contributed to the injury.

Running through all the compensation laws that have been enacted in recent years is recognition that the common law basis for compensation to the injured employee is unsatisfactory in that it results in the employee, in many instances, bearing the load of noncompensable injury, with its train of ill consequences socially. Thus they generally provide for some scheme of compulsory insurance in which the employee may participate regardless of all question of fault. The statutes generally make the occurrence of the injury in the course of the employment the sole basis of the employees' right to compensation, and, while in some laws employers are given an option to effect insurance in

favor of the employees, their failure to do so results practically in their carrying their own insurance since the common defenses against liability are taken away.

On account of the public interest thought to be subserved by the enactment of such laws, they have been sustained as against the constitutional objections that they are not a proper exercise of the police power; that they unduly restrict the liberty of contract; that they deprive persons of property without due process of law and that they deny the equal protection of the laws. New York C. R. Co. v. White, 243 U. S. 188, 61 L. ed. 667, L.R.A.1917D, 1, 37 Sup. Ct. Rep. 247, Ann. Cas. 1917D, 629, 13 N. C. C. A. 943; Arizona Employers' Liability Cases (Arizona Copper Co. v. Hammer) 250 U. S. 400, 63 L. ed. 1058, 6 A.L.R. 1537, 39 Sup. Ct. Rep. 553.

The philosophy of the substitution of compensation regardless of fault for the common-law liability is well expressed by Justice Pitney of the United State Supreme Court in the case of New York C. R. Co. v. White, supra, as follows (pages 204, 205 of 243 U. S., page 253 of 37 Sup. Ct. Rep. [61 L. ed. 675, 676, L.R.A.1917D, 1, Ann. Cas. 1917D, 629]).

"The provision for compulsory compensation, in the act under consideration, cannot be deemed to be an arbitrary and unnecessary application of the principle, so as to amount to a deprivation of the employer's property without due process of law. The pecuniary loss resulting from the employee's death or disablement must fall somewhere. It results from something done in the course of an operation from which the employer expects to derive a profit. In excluding the question of fault as a cause of the injury, the act in effect disregards the proximate cause and looks to one more remote—the primary cause, as it may be deemed—and that is, the employment itself. For this, both parties are responsible, since they voluntarily engage in it as coadventurers, with personal injury to the employee as a probable and foreseen result. In ignoring any possible negligence of the employee producing and contributing to the injury, the lawmaker reasonably may have been influenced by the belief that in modern industry the utmost diligence in the employer's service is in some degree inconsistent with adequate care on the part of the employee for his own safety; that the more intently he devotes himself to the work, the less he can take precautions

for his own security. And it is evident that the consequences of a disabling or fatal injury are precisely the same to the parties immediately affected, and to the community, whether the proximate cause be culpable or innocent. Viewing the entire matter, it cannot be pronounced arbitrary and unreasonable for the state to impose upon the employer the absolute duty of making a moderate and definite compensation in money to every disabled employee, or in case of death to those who were entitled to look to him for support, in lieu of the common-law liability confined to cases of negligence."

These general observations regarding the underlying theory of compensation statutes may properly be taken into consideration if they tend to throw light, as we think they do, on the meaning of our statute.

That it was the intention of the legislature in the act under consideration to provide compensation for all employees engaged in a hazardous occupation seems quite evident from some of the outstanding features of the law under consideration. In the first section, heretofore referred to, such a policy is in effect declared. In §§ 6 and 7 every employer subject to the act is required to contribute to the workmen's compensation fund in proportion to annual expenditures of money for the service of persons subject to the act, and in section 8 the premium is made collectible by civil action and the duty of collection imposed upon public officers. By § 9 employers who comply are exempted from liability to respond in damages for injury to or death of an employee occurring during a period covered by the premiums paid. By § 10 it is made the duty of the compensation bureau to disburse the fund to injured employees (or if dead, to their dependents) of employers who "have paid into the fund the premiums applicable to the classes to which they belong" and it is provided that the payments "shall be in lieu of any and all rights of action whatsoever against the employers of such injured or deceased employees." In § 8 it is further provided that the employer's compliance with the provisions of the act requiring payments to be made to the fund "shall date from the time of the payment of said money so collected as aforesaid to the state treasurer for credit to the workmen's compensation fund." These provisions of the law thus briefly sketched clearly indicate, in our opinion, an intention to give to every employee within the act a right to compensation for injury occurring in the course of employment regardless of all question of

fault. Since payments into the fund are compulsory, theoretically, every employee would have recourse to the fund, but at the same time the legislature considered the consequences of a failure on the part of the employer to contribute. It excludes his employees from the fund, and, in § 11, it holds the noncomplying employers to an enlarged liability by providing that they shall not be entitled to the benefits of the act during the period of noncompliance and, in addition, that they shall "be liable to their employees for damages suffered by reason of the injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injury." It will be noted here that no criterion of liability is laid down other than that the injury "be sustained in the course of employment." In view of the provisions referred to, it should be assumed that the legislature intended to place employees of noncomplying employers in a less favorable position with respect to compensation than those of employers who comply with the act. We think the contrary affirmatively appears.

To illustrate: If an employee be injured in the course of his employment by the "wilful act" (quoting from § 2) "of a third person directed against an employee because of his employment" the injury would clearly be one which the act defines as arising in the course of the employment, and for such an injury compensation is provided if the employer has complied with the act. If the employer has not complied with the act, however, not being liable for such an injury on any common-law basis, the employee would not be compensated unless the employer is made liable by § 11. We are clearly of the opinion that § 11, by providing that a noncomplying employer shall be liable to his employee for damages suffered by reason of injury sustained in the course of employment, makes the employer liable upon as broad a basis as the fund would be liable if the employer had complied. Otherwise construed the act would leave the employee of a noncomplying employer wholly without remedy in such a situation and he would be in this position by virtue of the failure of the employer to have paid the premiums for which he is made absolutely liable. We cannot discover within the four corners of the act any indication that the legislature intended that the employer, by defaulting in his premium obligation,

should be permitted to defeat the substantial right of compensation for an injury arising in the course of employment.

It is argued, however, that the act only gives to employees of employers who have complied with it this substantial right resting on the broad foundation of injury with or without fault and that it does not concern itself particularly with employees of noncomplying employers further than to withdraw from the employers the common law defenses. It is said that it is one thing to hold the fund liable for damages occurring without fault, as these damages are more or less limited, being assessed by the Bureau according to a scale embodied in the act; but that it is quite a different thing to hold an employer to a liability for all the damages sustained, to be assessed by a jury. It must be admitted that the act does exactly this with regard to all injuries for which the employer was liable on any common law basis and, with the common law defenses taken away, this class would include a very high percentage of the injuries actually occurring in private employment. So the extension to the few situations in which an employer may now be held though he be without fault, is not so broad as to suggest an absence of legislative intention to that effect. If the legislature saw fit, as it clearly did, to charge a noncomplying employer with damages, to be measured by a jury using competent legal standards, for an injury occasioned by his negligence but which would probably not have occurred but for the employee's contributory negligence, would it not, with equal reason, charge him in the same manner for an injury occurring in the course of the employment through the wilful act of a third person directed at him because of his employment. In this act, as we read it, more legislative concern is manifested lest an injured employee engaged in a defined hazardous occupation go uncompensated, than is exhibited towards an employer who neglects his or its obligations to pay premiums.

Since § 11 makes the sole criterion of the liability of a noncomplying employer the occurrence of injury in the course of employment, we think the act must be construed as placing the employee of such an employer in the same position he would have occupied had his employer complied with the act, except that such employee's claim is necessarily subject to the hazard of financial responsibility. Also, his damages may

be adjusted by the legal machinery for arriving at compensation instead of by the workmen's compensation bureau.

Counsel for the appellant has cited the case of Hunter v. Colfax Consol. Coal Co. 175 Iowa, 245, L.R.A.1917D, 15, 154 N. W. 1037, Ann. Cas. 1917E, 803, as reaching a contrary conclusion. An examination of the Iowa statute under consideration in that case and also of the opinion of the court, points clearly to the distinction between that case and the one at bar.

"Nothing," says Salinger, J., delivering the opinion of the court, (page 255) "thus far adverted to has attempted to make the employer pay damages for injuries suffered in and because of employment given by him, where he is in no manner blamable for such injury. If the act itself has created such absolute liability, it must be done, so far as anything like doing it in terms is concerned, by that part of it which is:

" 'It shall be presumed: (A) That the injury to the employee was the direct result and grew out of the negligence of the employer. (B) That such negligence was the proximate cause of the injury—and that in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence.' "

Continuing he said:

"This is not a provision the employer has not the right to show he was wholly free from blame, but that he must take the affirmative upon the claim that he is blameless—that the employee need not prove the employer was at fault, but the latter must show he was not."

Of course the legislature would not have authorized the presumption of negligence to be rebutted unless to its rebuttal the ordinary legal consequence was to attach.

Our attention is also directed to the Ohio case of Fassig v. State, 95 Ohio St. 232, 116 N. E. 104, 13 N. C. C. A. 845, as coming to a contrary conclusion. The Ohio statute under consideration in that case is in this respect identical with ours, except for a very significant omission in our statute. The similar, wording of this section throughout compels the conclusion that this feature of our statute was taken from the Ohio law. Make the comparison:

### Ohio.

Employers mentioned in subdivision two of section thirteen (1465–

60) hereof, who shall fail to comply with the provisions of section twenty-two (1465–69) hereof, shall not be entitled to the benefits of this act during the period of such noncompliance, but shall be liable to their employees for damages suffered by reason of *personal* injuries sustained in the course of employment *caused by the wrongful act, neglect, or default of the employer, or any of the employer's officers, agents, or employees,* and also to the personal representatives of such employees where death results from such injuries, and in such action the defendant shall not avail himself or itself of the following common-law defenses:

The defense of the fellow-servant rule, the defense of the assumption of risk, or the defense of contributory negligence.

And such employers shall also be subject to the provisions of the two sections next succeeding.   (Italics ours.)

## North Dakota.

Employers subject to this act, who shall fail to comply with the provisions of sections six and seven hereof, shall not be entitled to the benefits of this act during the period of such noncompliance, but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injuries, and in such action the defendant shall not avail himself or itself of the following common law defenses:

The defense of the fellow-servant rule, the defense of the assumption of risk or the defense of contributory negligence.

And such employers shall also be subject to the provisions of section eight.

It will be seen that the italicized portion of the Ohio act expressly limits the liability of noncomplying employers to injuries caused by the wrongful act, neglect, or default of the employer, and this is the portion that is omitted in the North Dakota statute. This is not only sufficient to distinguish the Ohio case from the case at bar, but the comparison of the statutes affords a strong indication that the North Dakota legislature intentionally omitted the expression that would base liability of a noncomplying employer upon a neglect or breach of duty.

It has been suggested that if the legislature intended to impose upon a noncomplying employer an absolute liability for injuries occurring in the course of employment, there was no occasion to expressly enumerate the defenses of the fellow-servant rule, the assumption of risk and contributory negligence and to deprive the employer of the right to resort to them. Were all defenses to be excluded, it is said, why enumerate particular ones? In answer to this argument it is sufficient, in our opinion, to say that it is unnecessary to account for the reasons why the Legislature chose one method rather than another, but it is certain that by enumerating these defenses and rendering them unavailable, the intention was definitely expressed to make them unavailable as against whatever liability was imposed. In other words, it would not any longer be competent to defend upon the usual grounds upon which personal injury claims are contested.

The act in question is wholly devoid of any expression which would tend to show that the rights of a public employee within the act are any different as against his employer than those of a private employee. Hence, as the act clearly broadens the scope of the liability of a noncomplying private employer by rendering him or it liable for injuries for which there was no liability at the common law, similarly it gives to the public employee a right of action against his noncomplying employer on account of injuries for which it would not have been liable at common law. Whether or not the state would be excepted from this rule on account of the failure to embody a consent to be sued, is not involved here and not decided. For the foregoing reasons we are of the opinion that the complaint in the instant case states a cause of action and that the demurrer was properly overruled.

The order appealed from is affirmed.

BRONSON, Ch. J., NUESSLE, CHRISTIANSON, and JOHNSON, JJ., concur.