NELSON DILLARD, RESPONDENT, v. D. ELMER JUSTUS, APPELLANT.[*]

Kansas City Court of Appeals.   February 13, 1928.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2836, p. 858, n. 3; Master and Servant, 39CJ, section 445, p. 322, n. 33; section 691, p. 574, n. 54; section 902, p. 700, n. 71; section 1354, p. 1173, n. 97; section 1414, p. 1235, n. 81; section 1517, p. 1315, n. 1; Partnership, 30Cyc, p. 535, n. 50; Workmen's Compensation Acts, —CJ, section 36, p. 45, n. 24.

*M. S. Turner* and *J. C. Carr* for respondent.

*John D. Wendorff* for appellant.

FRANK, C.—Action for damages for personal injuries caused by an explosion of dynamite. Plaintiff recovered a verdict and judgment in the sum of $4750 and defendant appealed.

No complaint is made against the petition. The answer denies generally the allegations of the petition, and then affirmatively pleads that the circuit court of Jackson county had no jurisdiction to hear and determine this cause, for the reason that plaintiff's injuries, if any, were received in the State of Kansas, where, at said time, an act of the Legislature of said State, known as the, ''Workmen's Compensation Act,'' was and still is in full force and effect, and whatever damages or compensation, if any, to which plaintiff might be entitled, are governed and controlled by the Workmen's Compensation Act of the State of Kansas. The answer also pleads the terms and provisions of said Compensation Act, which we will notice in course of the opinion.

The evidence was that defendant was sole owner of and conducted a plumbing business in Kansas City, Missouri, under the name of Justus Plumbing Company. There was also a co-partnership of Justus & Schenck, composed of defendant and one E. A. Schenck, engaged in the plumbing business in Kansas City, Kansas, under the style and firm name of Justus & Schenck.

Appellant contends that plaintiff was in the employ of the partnership of Justus & Schenck at the time he was injured, while plaintiff claims that he was employed by Justus Plumbing Company of which defendant was the sole owner. These contentions are immaterial because in either situation defendant would be liable in event plaintiff made a case. [30 Cyc. 535.]

On January 13, 1925, defendant was engaged in installing plumbing fixtures in a house located on 39th street, in Kansas City, Kansas. Plaintiff was in the employ of defendant as a common laborer and was engaged in digging a ditch or trench from this house to the water

main for the purpose of laying a water pipe therein in order to connect the plumbing fixtures in said house with the water main. The ground was underlaid with rock and dynamite was used for blasting the rock out of the ditch. Four men were working on this job. Olen Stout, a plumber, was working on the second floor of the house to which the ditch was being dug. Plaintiff and one Willis Wonderling were working in the ditch, drilling holes in the rock for the purpose of placing dynamite therein in order to blast the rock out of the ditch. One Alexander Robinson was defendant's foreman in charge of and directing the work of digging the ditch. He looked after the shooting of the dynamite. Neither plaintiff nor Wonderling had anything to do with the handling or use of the dynamite.

On the morning in question, an open fire was burning on the ground near the ditch where plaintiff was working. This fire was built for the purpose of warming the drills. Defendant brought some dynamite, caps and fuse to the works and delivered them to Robinson, who was in charge of the work and told him not to put the dynamite near the fire.

The weather was cold and Robinson placed the dynamite near the fire, as he said, to keep it from freezing. Defendant asked him if it were necessary to put it there. Robinson replied that it was far enough away from the fire to be safe; that the weather was cold and it would freeze quickly. Defendant said nothing more, and in a few minutes drove away.

Defendant testified that he was experienced in the use of dynamite and that it would endanger the safety of the men on the premises if a piece of fuse was put on a stick of dynamite and a cap put on the fuse whether it was laid close to the fire or not.

Robinson arranged the fire for thawing out the dynamite, but Wonderling, an employee of defendant, put some thin boards on the fire and made it larger. Robinson was present and knew these boards were placed on the fire but made no objection to it. The weather was cold and the wind was blowing. Robinson sat down by the fire, cut the fuse into pieces of proper length for use, put caps on two or three pieces of the fuse and dropped them on the ground about three or four feet from the fire, on the east side. The dynamite was about four and one-half feet south of the fire. Robinson had put some of the caps in the box with the dynamite.

The evidence shows that dynamite is exploded by a jar, and if a cap, not attached to dynamite explodes, the jar from the explosion, if of sufficient volume, will explode the dynamite. The caps were lying about three and one-half feet from the dynamite. Robinson was an expert in the use of dynamite. He testified that there was sixty pounds pressure to one cap, and if six or eight caps exploded at a distance of four feet from the dynamite, the explosion would explode the dynamite.

There is testimony that defendant gave Robinson seven or eight caps at the time he gave him the dynamite. Robinson also testified that heat would cause caps to explode and it must have been heat that caused the explosion.

Plaintiff did not know that the dynamite had been placed near the fire. The ditch in which he was working, was five or six feet from the fire. He had just finished drilling a hole and started to get out of the ditch when the explosion occurred.

Plaintiff testified,

"Q. What's the first thing you knew of any explosion about to take place out there that morning? A. When I came up I saw something spit up from the fuse and said, "Look out," and at that time the thing went off, and I didn't know any more from that time.

"Q. Where were you when you next knew anything? A. In Bell Hospital."

Plaintiff was seriously injured by the explosion. No point is made in this court as to the extent of his injuries or the size of the verdict.

Appellant's first contention is that plaintiff's cause of action is governed by the provisions of the Workmen's Compensation Act of the State of Kansas, and for this reason, the trial court had no jurisdiction to hear and determine it.

The parts of said act here pertinent are as follows:

"This act shall apply only to employment in the course of the employers trade or business on, in or about . . . building.

". . . This act, therefore, shall only apply to employers by whom five or more workmen have been employed continuously for more than a month at the time of the accident."

"Building work means any work in the erection, construction, extension, decorating, altering, repair or demolishing of any building or structural apertinence."

"No action or proceedings provided for in this act shall be brought or maintained outside of the State of Kansas."

Said act also provides that every employer and every employee entitled to come within the provisions of said act shall be presumed to have done so unless a written declaration to the contrary be filed with the Secretary of the State.

After the provisions of this act were introduced in evidence by defendant, plaintiff introduced in evidence two opinions of the Supreme Court of the State of Kansas construing said act, Hicks v. Swift & Company, 101 Kan. 760, and Stover v. Davis et al., 110 Kan. 808.

In the Hicks case, supra, plaintiff was employed by defendant to drive a truck for the delivery of meat from the packing house of defendant, in Kansas City, Kansas, to its customers in that city and in Kansas City, Missouri. He was injured by a box of meat falling on him while he was attempting to make a delivery in Kansas City, Mis-

souri, several miles from the packing house. The Supreme Court of Kansas held that the plaintiff's cause of action was not governed by the Workmen's Compensation Act. In course of the opinion the court said:

"Therefore, no recovery can be had by the plaintiff in this proceeding unless he was injured "on, in or about" the factory or packing house of the defendant. That the word "about" is one of locality and not of mere association or connection has been determined in a recent case, where it was said:

"There is no anomaly in distinguishing between trainmen and yardmen working on or about a railroad, and railroad employees working in a distant office building where they are as secure from the peculiar hazards incident to railroading as the employees of a bank. Likewise, a factory drayman when in the course of his employment elsewhere than at the factory is no more exposed to extraordinary risk from the nature or condition of the work carried on there than a grocer's drayman. Consequently the act was extended, not to employment in the course of the employer's business generally, or whereever conducted, but the employer's business at designated places . . ."

"The court concludes that the word 'about,' as applied to a mine, fixes the locality of the accident for which compensation may be recovered, and that the accident must occur in such close proximity to the mine that it is within the danger zone necessarily created by those peculiar hazards to workmen which inhere in the business of operating the mine. If the accident occur outside this zone, the distance from the mine, whether very near or very far, is immaterial." [Bevard v. Coal Co., ante, pp. 207, 214, 215.]

In Stover v. Davis, supra, plaintiff was in the employ of defendant and he together with three other employees were engaged in drilling an oil well. While so working plaintiff received an injury from which he died, and his widow sought to recover compensation under the Workmen's Compensation Act. The court denied a recovery on the ground that defendant did not have five or more workmen employed continuously for more than a month at the time of the accident. In disposing of the case the court said:

"The plaintiff seeks to bring the employment within the terms of the statute by counting the casing crew of five men. This may not be done for two reasons. The casing crew worked but three days, November 29, November 30 and December 1, and the casing crew was not employed by defendants . . ."

"The defendants' workmen were taken from the city of El Dorado, where they resided, to the site of the well, and from the well to the city, by a taxicab driver who made two trips per day, one at noon and one at midnight. The plaintiff insists that the taxicab driver should be counted as one of the defendants' workmen. In its relation

to the present controversy, application of the statute of 1917, quoted above, is limited to employment in the course of the employer's business on, in or about engineering work, embracing construction of an oil well. Workmen affected by the act are workmen exposed to the peculiar hazards of the locality (Bevard v. Coal Co., 101 Kan. 207, 165 Pac. 657; Hicks v. Swift & Co., 101 Kan. 760, 168 Pac. 905), and in ascertaining the number of workmen necessary to bring an employer's business within the statute, none are to be counted except those exposed to the hazards of the locality (Udey v. City of Winfield, 97 Kan. 279, 155 Pac. 43). It seems quite clear the El Dorado taxicab driver was engaged in the transportation business, and not in engineering work on the farm where the well was located."

The evidence in the case at bar shows that defendant had only four men employed on, in and about the building where the work in question was being done.

Section 44,507 of the Compensation Act provides that the act shall only apply to employers by whom five or more workmen have been employed continuously for more than one month at the time of the accident. Section 44,505 provides that the act shall apply only to employment in the course of the employers trade or business on, in or about a . . . building, etc.

If the act only applies to employers by whom five or more workmen are employed, and if it applies only to employment in the course of the employers trade or business on, in or about a building, etc., the irresistible conclusion is that the five men must be employed and working on, in or about the building or other place where the accident occurrs. We, therefore, hold that plaintiff's cause of action is not governed by the Workmen's Compensation Act of the State of Kansas because five or more men were not employed by defendant on, in or about the place where plaintiff was injured.

Appellant, however, contends that the court erred in rejecting his offer of proof, that defendant for more than one month prior to plaintiff's injuries had in his employment more than five men continuously engaged in that trade or business in Kansas City, Kansas.

This offer was objected to on the ground that it did not limit the employment of five or more men in and about the work where plaintiff was injured.

At the time this objection was made, defendant's counsel stated that it was not his purpose to so limit the evidence offered. For this reason the objection to the offer of proof was properly sustained.

It is contended that Robinson was either an independent contractor or a fellow-servant of plaintiff and for these reasons, defendant was not liable for his act of negligence, if any, in placing the dynamite, caps and fuse near the fire.

An independent contractor has been defined as one who renders service in the course of an occupation representing the will of his

employer only as to the result of his work, and not as to the means by which it is accomplished. [Gayle v. Missouri Car Company, 177 Mo. 427, 76 S. W. 987, 992, and cases cited.]

Defendant testified that he instructed Robinson to show the men where to drill, and to load the holes, put the proper amount of powder in them, see that the trenches were covered properly, and to shoot as an expert; that the men were to obey the orders of Robinson; that he was there for that purpose; that he was to direct the men what to do and they were to do what he told them; that plaintiff was under the direction of Robinson; that Robinson was employed by the hour and he was to instruct the men where to drill, how to drill, and do the shooting.

Robinson testified that at the time he took charge, plaintiff and Wonderling were working there; that he directed them where to drill the holes and how deep to drill them; that he told them how many holes to drill, and they followed his instructions.

Plaintiff testified that the defendant told him that Robinson was a foreman, and that he (plaintiff) was to obey his orders. Robinson was not employed to excavate the trench and left free to use any means he saw fit in accomplishing it. Defendant employed the laborers, furnished the material with which to do the work, employed and paid Robinson by the hour to superintend it, and instructed him as to his duties. Defendant told plaintiff that Robinson was the foreman in charge of the work and his orders must be obeyed.

In the light of these facts, the court could not, as a matter of law, say that Robinson was an independent contractor. That question was one for the jury to determine under proper instructions.

Neither can he be conclusively regarded as a fellow-servant of plaintiff. Where, as here, a servant is clothed with authority to direct and control other servants in the performance of the master's work, he is not a fellow-servant of the others, but is a vice-principal. [State ex rel. Duvall v. Ellison, 283 Mo. 536, 223 S. W. 651.]

Wonderling worked in the ditch with plaintiff. Contention is made that if plaintiff's injuries were caused by Wonderling placing too much wood on the fire, then Wonderling was either the fellow-servant of plaintiff or was acting outside the scope of his authority in putting the wood on the fire and in neither event is plaintiff liable.

The petition alleges that defendant negligently and carelessly failed to exercise due care to furnish plaintiff with a reasonably safe place in which to perform his work. This was defendant's primary duty which he could not delegate. Defendant was experienced in the handling and use of dynamite. He was present on the premises, saw the dynamite, fuse and caps placed near the fire and permitted them to remain there. If the premises were not reasonably safe on account of the presence of the dynamite near the fire, defendant was liable without regard to whether the unsafe condition arose from the act of

either Robinson or Wonderling, or whether either of them was a fellow-servant of plaintiff. [State ex rel. Duvall v. Ellison, 283 Mo. 532, 223, S. W. 651; Wuellner v. Crescent Planing Mill Co., 303 Mo. 38; Bender v. Kroeger Grocery Co., 276 S. W. 405; House v. St. Louis Co., 270 S. W. 135.]

It is claimed that instruction No. 2 is erroneous. The criticism leveled against this instruction is bottomed on the contention that Robinson's act in placing the dynamite, fuse and caps in close proximity to the open fire, and permitting them to remain there until the dynamite, exploded, was either the act of an independent contractor, or fellow-servant of plaintiff, for which defendant was not liable. We have heretofore determined that Robinson could not be conclusively regarded either as an independent contractor or as a fellow-servant of plaintiff.

Plaintiff's instruction No. 3 is criticized. Appellant says in brief that this instruction may be correct as an abstract proposition of law but is not warranted by the evidence. The instruction required the jury to find that defendant knew or by the exercise of ordinary care could have known of the dangerous and unsafe condition of the premises, if any, in time to have removed said fuse, dynamite and caps, if any, away from said fire, etc.

The contention is that there is no dispute but that when defendant gave the dynamite, fuse and caps to Robinson, he told him not to place the dynamite near the fire, and went away without knowing that it had been so placed, and without knowing there was any danger of an explosion.

There is no merit in this contention for two reasons, (1) because Robinson's act in placing the dynamite near the fire, was the act of defendant, and (2) there is evidence that defendant knew it was so placed before he left the premises. Defendant disputes this fact, but we cannot weigh conflicting evidence.

Error is assigned in the refusal of defendant's requested instruction No. 4. This instruction was drawn on the theory that the Workmen's Compensation Act of the State of Kansas governed plaintiff's cause of action. It recited that if defendant had in his employ five or more men continuously for more than one month prior to plaintiff's injury, he could not recover, and that in determining whether or not five or more men were so employed, it was not necessary that such men be employed at the same building or digging in the same trench, but it was sufficient if five or more employees were engaged in the general trade or business carried on by defendant in the State of Kansas for more than one month prior to plaintiff's injury.

What we have already said about the applicability of the Workmen's Compensation Act to this case, necessitates ruling this contention against appellant.

Defendant's demurrer to the evidence was predicated on the contentions heretofore discussed and was properly overruled.

We find no reversible error in the record, and therefore affirm the judgment. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.