# MARTIN P. ALTMAN, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(28 A.L.R. 1337, 195 N. W. 287.)

**Master and servant — Workmen's Compensation Act has no extraterritorial effect.**

1. The North Dakota Workmen's Compensation Act (Laws 1919, chap. 162)

Note.—(1) Extraterritorial application of Workmen's Compensation Acts; conflicts of laws, see notes in L.R.A.1916A, 443; L.R.A.1917D, 83; 28 R.C.L. 724; 4 R. C. L. Supp. 1838; 5 R. C. L. Supp. 1556.

was not intended to have extraterritorial effect so as to render the compensation fund liable for injuries sustained in the course of an employment the situs of which is without the state.

**Master and servant — evidence held to show compensation claimant was injured outside state.**

2. The injuries sustained by the plaintiff in this case are held to have been sustained during the course of an employment the situs of which was in the state of Washington.

Opinion filed July 25, 1923.   Rehearing denied October 6, 1923.

Workmen's Compensation Acts, C. J. § 28 p. 32 n. 45; § 114 p. 115 n. 37.

From a judgment of the District Court of Stark County, *Pugh, J.,* defendant appeals.

Reversed.

*J. P. Cain,* State's Attorney, *Philip Elliot* and *L. J. Wehe,* for appellant.

That one who visited defendant's office seeking employment and was directed by the defendant to go to the defendant's logging camp on a logging train and was injured on the way was not an employee; and that the relation of employee and employer did not exist. That he was not a servant of the defendant until it was time for him to begin such service and he was actually hired and put to work. Susznik v. Alger Logging Co. 76 Or. 189, 147 Pac. 922; Putnam v. Pac. Monthly, 68 Or. 54, 45 L.R.A.(N.S.) 338, 136 Pac. 835.

"The contract of employment did not contemplate any work by him within the state—the mere fact that the employee is engaged by a resident of a state to go out of the state for services—cannot bring the employment within the act. The mere fact that the contract was made in the state is not material here, when we understand that the contract relates solely to work to be performed outside of the state." Gardner v. Horseheads Constr. Co. 156 N. Y. Supp. 899.

Employers subject to this act, who shall fail to comply with the provisions of sections six and seven hereof, shall not be entitled to the benefits of this act during the period of such noncompliance, but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment and also to the personal

representatives of such employees where death results from such injuries and in such action the defendant shall not avail himself or itself of the common-law defenses.   Olson v. Hemsley (N. D.) 187 N. W. 147.

But in states where the Workmen's Compensation Law is compulsory, as is the case in the state of North Dakota, the weight of authority is to the effect that the liability incident to the relation between the workmen's compensation bureau and the injured employee do not spring from the contract between the employer and the employee, but are created by the statute itself.   North Alaska Salmon Co. v. Pillsbury (Cal.) 162 Pac. 93, L.R.A.1917E, 642, and cases cited.

Ordinarily the statutes of a state have no force beyond its boundaries. Sutherland, Stat. Constr. 2d. ed. § 13; Story, Confl. L. 8th ed. §§ 7–22.

The several states of the union are sovereign, independent and foreign to each other in regard to their internal and domestic affairs. Stevens v. Brown, 20 W. Va. 450.

The intention to make an act of legislature operative with respect to occurrences outside the state will not be declared to exist unless such intention is clearly explained or reasonably to be inferred from the language of the act, or from its purpose, subject-matter or history. Kennerson v. Thames Towboat Co. 89 Conn. 367, L.R.A.1916A, 436, 94 Atl. 372; Gould's Case, 215 Mass. 480, 102 N. E. 693; Merrill v. Baltimore & R. Co. 63 N. H. 259.

Our law in general is territorial and not personal.   Witford v. Panama R. Co. 23 N. Y. 465; Davis v. N. Y. & N. E. R. Co. 143 Mass. 301, 9 N. E. 815; Howreth v. Lombard, 175 Mass. 570, 56 N. E. 888; Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386; Gould's Case, 125 Mass. 480, 102 N. E. 693; Maxwell, Interpretation of Stat. 4th ed. 212.

*T. F. Murtha* (*Sullivan, Hanley & Sullivan,* on oral argument), for respondent.

The North Dakota Workmen's Compensation Act has extraterritorial application.   3 A.L.R. 351 annotated; 18 A.L.R. 285, 292 annotated; Pickering v. Industrial Commission (Utah) 201 Pac. 1029 Syl. 1.

A provision in a workmen's compensation act, which allows employer and employee for compensation in case of injury, that an appeal from the commissioner's award may be had to the "superior

court for the county in which the injury was sustained" does not prevent the application of the act to an injury occurring out of the state, under contracts made within it, since the injury may be said to have been sustained in the place where the contract was made. Hagenbeck v. Leppert (Ind.) 117 N. E. 531; Post v. Burger & Gohlke (N. Y.) 111 N. E. 351; Douthwright v. Champlin (Conn.) 15 N. C. C. A. 870, 878, 16 N. Y. Supp. 274; State ex rel. Maryland Casualty Co. v. Dist. Ct. (Minn.) 168 N. W. 177; State ex rel. McCarthy Bros. v. Dist. Court (Minn.) 169 N. W. 274; Anderson v. Miller Scrap Iron Co. (Wis.) 170 N. W. 279.

BIRDZELL, J.   This is an appeal from a judgment in favor of plaintiff, entered in the district court of Stark county.

J. H. Pifer had an ice harvesting contract with the Northern Pacific Railway Company and the plaintiff was employed in his service at Dickinson, North Dakota. The operations of Pifer extended through several states, and, while he lived at Larimore, North Dakota, his winter headquarters were at Spokane, Washington. The plaintiff was injured in the course of his employment at Thorpe, in the state of Washington, in January, 1921. Pifer paid premiums in the state of Washington for all men employed by him there, including the plaintiff Altman. In calculating his premium and payroll in the state of North Dakota, Altman was not included.

The trial court adjudged that the injury reduced plaintiff's earning capacity 80 per cent and that he should recover and be paid out of the Workmen's Compensation Fund $20 per week for 416 weeks, from January 27, 1921; that he should recover costs and disbursements taxed at $58.70 and attorney's fees fixed in the sum of $200 for services in the trial court and $200 for services on appeal. The plaintiff had previously filed his claim with the Industrial Insurance Division, Department of Labor and Industries of the state of Washington, and received $210 as partial payment thereon. The trial court adjudged that the defendant should receive credit for this amount upon plaintiff's claim.

The material facts are as follows: Plaintiff was hired at Dickinson in the fore part of January, 1921. He claims that Pifer personally engaged him and bases his claim upon the following conversation which

took place at the St. Charles Hotel at Dickinson on or about January 9, 1921: "And I went there and I asked Mr. Pifer about a job and how long a job we were going to have. He said maybe twelve or fifteen days he figured here and probably go to Mandan and I asked him if he was going to go West to do any cutting. He said he might send his crew to Homestake, Montana, *if it froze over,* or west of there. *He didn't know,* but he would let us know when he needed anybody and I could go when he sent for us and he said to come around in the morning and go to work, and I went over in the morning and they didn't start until I believe in the afternoon." Plaintiff then worked at Dickinson until that job was finished, and was paid off on Saturday, the 21st of January. When he and the other men were paid off after the job at Dickinson was finished, nobody seemed to know whether anybody would be employed to go either to Montana or Washington.

When Pifer left Dickinson, it seems that he wired his foreman at Thorpe asking him if he needed more men and the foreman at Thorpe answered that he needed twenty men, whereupon Pifer wired Paul Zimmerman to pick up twenty men at Dickinson. On Sunday, after the Dickinson job was finished, and after the men had been paid off, Zimmerman received this telegram and proceeded to pick up the men, and among the men engaged was the plaintiff Altman. Plaintiff and the other men were paid at the rate of forty cents per hour. The undisputed evidence further shows that it was the custom in this line of business to pay off the men when each job was finished and then to re-engage them according to circumstances for other jobs. Transportation was furnished by the employer.

There is some evidence with reference to the impairment of the earning capacity of the plaintiff which it is not necessary to consider because of the view we take of this case.

The trial court found generally in plaintiff's favor; it found that he was employed at Dickinson and that his employment was continuous and uninterrupted and that he was injured in the course of his employment as heretofore stated.

This is a special proceeding, pursuant to the Compensation Act and not triable de novo on appeal to this court. The findings of the trial court, therefore, are presumed to be correct unless clearly opposed to the preponderance of the evidence. Gotchy v. North Dakota Work-

men's Comp. Bureau, 49 N. D. 915, 194 N. W. 663. Defendant contends that the act does not have extraterritorial operation; that the injury occurred in the state of Washington; and that the contract, though entered into in this state, as for service in another state, where the employer was insured under a compulsory system, and that, therefore, there is no liability against the Bureau or the fund.

In the case at bar, the hiring was by the hour and for no specified time. The testimony indicates that it was the custom of the employer, in the absence of good reasons, to pay off his men at the end of each job. That is what he did when the Dickinson job was finished. He paid them all and then engaged some, but not all, of them to go to the state of Washington to work there. Zimmerman, who had been employed by Pifer for some time previously, testifies to this custom as follows: "Lots of fellows come to work that was never hired; just grab a place. They know that there is a job there and they would stay there. When they get through with one job it is the custom to pay them off and the boys that want to get another job come there. (Where the foreman is.) Of course they all like to have their own job and they mostly all place them. If they loaded cars, they would get a car and hold that job until they push them away, and the other jobs the same thing." The testimony of this witness, who is an uncle of the plaintiff and who apparently was not in the slightest hostile to him, is uncontradicted. He says he did not know that any men were needed in the West until he received the telegram from Pifer, his employer; the plaintiff himself says that neither Zimmerman nor Pifer knew about how many men were needed West until the telegram came. Pifer says he did not know what men, if any, were needed West until he received advices from his foreman or foremen. Pifer says the custom or practice of the business was that each foreman would hire and discharge his own men. This testimony is all uncontradicted. It is impossible to escape the conclusion that when the plaintiff was employed at Dickinson and was put to work cleaning cars, he was employed for an indefinite time which could be terminated at the will of either himself or his employer; that, according to the custom of the business, and not in violation of the agreement of hire, when the job was finished at Dickinson, he was paid off and the employment came to an end; that when the message came from Pifer to his representative

at Dickinson, asking for a certain number of men to be transported to the state of Washington, a contract of employment was entered into at Dickinson for labor to be performed in the state of Washington.

The finding of the trial court that the contract was continuous is not supported by the testimony of the plaintiff himself. In fact, the undisputed testimony in the record is to the contrary. It is true the plaintiff asserts that he was employed by Pifer and not by Zimmerman, but his own testimony as to the actual conversation with Pifer does not support this conclusion. In any event, this is immaterial. The testimony shows that the employment was not continuous and that there was a separate engagement for the Washington job. Plaintiff was paid by the hour and paid off and released when the job was finished. His pay did not commence again until he started to work in the state of Washington.

The supreme court of Minnesota, in the case of Johnson v. Nelson, 128 Minn. 158, 150 N. W. 620, held that a person engaged in Minnesota, on April 2, by the day, upon railroad construction work, who worked at different places in that state until June 26, when he agreed, upon request, to go to Wisconsin on similar work for defendant and was injured four days after commencing work in Wisconsin, must proceed under the law of Wisconsin and not under the law of Minnesota. The court holds that the employment was not continuous and says: "The employment was for no definite period. When plaintiff, on June 26, 1913, was requested to go to Wisconsin, he was free to accept or refuse. Had he refused, no existing contract between the parties would have been breached; nor would there, had plaintiff been discharged. Therefore, when he agreed to go it was in reality a new hiring for that work. That was the first time plaintiff was in a position to choose between the two remedies open to him in Wisconsin in case he, in his contemplated employment, should meet with an injury. The contract of hiring referred to in the statute quoted (the Wisconsin statute) must mean an agreement to work in Wisconsin where the law applies." The facts in that case, bearing upon the question of continuity of employment, were almost identical with the facts in the instant case.

We think the evidence indisputably shows that the plaintiff was employed under a North Dakota contract to perform work in the state of Washington; and that such employment in Washington cannot be

considered merely incidental to an occupation, hazardous within the meaning of the act, conducted in North Dakota. If this view of the evidence is correct, even according to courts which hold that a compulsory act has extraterritorial operation, Post v. Berger, 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158, 10 N. C. C. A. 888, the North Dakota Compensation Bureau is not liable. Perlis v. Lederer, 189 App. Div. 425, 178 N. Y. Supp. 449; Gardner v. Horseheads Constr. Co. 171 App. Div. 66, 156 N. Y. Supp. 899; Union Bridge & Constr. Co. v. Industrial Commission, 287 Ill. 396, 122 N. E. 609; Davidson v. Payne, 281 Fed. 544; North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, L.R.A.1917E, 642, 162 Pac. 93; Smith v. Heine Safety Boiler Co. 224 N. Y. 9, 119 N. E. 878, Ann. Cas. 1918D, 316; Re Gould, 215 Mass. 480, 102 N. E. 693, Ann. Cas. 1914D, 372. Whether the plaintiff has a remedy against the Industrial Insurance Division of the Department of Labor and Industries of the state of Washington, where he originally filed his claim and where it was allowed, we, of course, do not decide.

The Connecticut court holds that the compensation law of that state has extraterritorial operation. It is of the voluntary type. The New York law is compulsory. On the plaintiff's theory, the New York law would become a part of the contract, if made in New York, and the employee could claim under that act wherever injured. The New York courts do not so hold. Perlis v. Lederer, supra. Neither does the supreme court of Connecticut in Banks v. Albert D. Howlett Co. 92 Conn. 368, 102 Atl. 822, where the contract was made in New York to be performed in Connecticut. Recovery was permitted under the Connecticut act, on the theory that the Connecticut law became a part of the contract. It is strongly contended that the act became a part of the contract of hire, notwithstanding its compulsory character; and that it would best comport with the humanitarian purpose of the act to hold that the legislature intended that the right of recourse against the Bureau and the fund follows the employee wherever he goes, whether incidental to a local employment or not, if the contract of employment be entered into in North Dakota. This position is maintained by counsel for respondent with much ability and has support among some text writers and in some of the adjudicated cases. We have just held, in Fahler v. Minot, 49 N. D. 960, 194 N. W. 695, that there is no lia-

bility against the Bureau and the compensation fund unless the employer has in fact complied with the act and paid, or made arrangements to pay, the required premium. In that case, the city had wholly failed to pay any premium, whatever, to the fund. Here the employer, Pifer, had complied with the law, as far as employees actually employed in North Dakota were concerned, but had paid no premiums—, no demand for such premiums, it seems, had ever been made on him by the Bureau—on the payroll of the men actually employed in Washington, where the respondent was injured. It is, in effect, contended that, inasmuch as the premium is not calculated on the basis of specific or named individuals, but upon the payroll, with the total number of employees estimated or given, *it is not material* that the work was done out of the state, the contract having been made in the state with an employer who, in so far as his men actually working in North Dakota are concerned, had complied with the law. That is to say: Can the fact that the contract of employment is made in North Dakota, but for service abroad, with an employer who has complied with the act, in so far as his occupation or business conducted within the state is concerned, give the employee under such contract, who is injured in the service beyond the borders of the state, the right of recourse against the bureau and the fund? The respondent, in effect, contends that it can. Manifestly, a co-employee in such foreign state and hired therein, would have no right of recourse against the fund; if, therefore, there be any such right in the person hired here for service in the foreign jurisdiction, it must be by virtue of the fact that the contract is made here. It would serve no useful purpose to discuss at length the various types of compensation acts. Suffice it to say that the North Dakota Workmen's Compensation Law is of the compulsory type. Employments are classified presumably according to the hazards and premium rates are fixed accordingly. The employer is notified of the premium he is required to pay according to the classification of his business or occupation. The premium is in some respects analogous, in theory at least, to a tax upon his business in order to create a fund out of which to pay employees injured in the course of duty or dependents of employees killed within the course of the employment. If he does not pay the premium, the state may proceed against him to enforce payment thereof. The workmen's compensation bureau, consisting of public officials,

collects the premiums and approves all vouchers drawn against the fund on account of death or injury within the act; the state treasurer is custodian of the fund. The employer and the employee enter into a contract of service and, the employer having complied with the law by paying the premiums, the employee is automatically insured, with the right of recourse against the Workmen's Compensation Bureau, which, however, is not a party to the contract of service, knows nothing of its terms, and never has any connection therewith. The state, through the Bureau, makes the necessary levies, called premiums, on employers, collects the fund, using the governmental machinery for this purpose, and disburses the same to employees within the law. There is nothing contractual in connection with the creation of the fund or the payment of benefits thereunder. Failure to comply with the law may make the employer the absolute insurer of the safety of the employee as far as injuries arising out of or in the course of the employment are concerned. Fahler v. Minot, supra.

The question in this case is essentially one of statutory construction. Did the legislature intend that the Compensation Act should operate to insure all persons employed under a North Dakota contract, regardless of where the parties intend the contract of employment to be performed?

The fundamental conception of the Compensation Law is that no employee is insured unless his employer belongs to a class that comes within the compensation act and then only in the event that the employer has paid the premium and complied with the law. Otherwise, the employee may not recover against the bureau or the compensation fund. Note a recent change in the law, however, Sess. Laws 1923, chap. 215. The employer is not protected, of course, unless he complies with the act. We think that the legislature intended to found the compensation scheme upon the fundamental proposition that no employer should be protected unless he had complied, and that no employee should have recourse against the *fund* for compensation unless his employer was under legal obligation, by the terms of the act itself, to pay and had, in fact paid or made arrangements to pay a premium to the compensation bureau upon a payroll in which, as a matter of law, the salary or wages of such employee should be included. We do not mean to say that the employee may lose the right of recourse against

the fund because the bureau fails properly to require the inclusion of the salary or wages of such employee in the payroll on which the premium charge is based, or because the bureau misconstrues the law. What we do mean to say is that the legislature did not intend that any employee should have recourse against the compensation fund, created by premiums levied upon employers, unless the bureau had the power, under the act, to compel the employer to contribute to the common fund in the form of a premium payment at the usual rate, and unless he had in fact paid or made satisfactory arrangements to pay such premium, based upon the classification of the business or employment and calculated upon a payroll in which the salary or wages of such employee should, as a matter of law, be included. To state the proposition conversely, we do not believe that the legislature intended to require local industry to carry hazards of occupations or employments, the situs of which is in a foreign jurisdiction and beyond the borders of the state, and not merely incidental to a business or occupation within the state, and which cannot, as a matter of law, be required to, and do not in fact, contribute to the compensation fund in the form of a premium collected from the proprietor of the business or industry.

From what we have said, it follows that the fact alone that the contract of employment is made in the state of North Dakota is not sufficient to give the employee the right of recourse against the workmen's compensation fund if the employment, business or occupation is beyond the jurisdiction of the bureau and there is no legal obligation on the employer to contribute to the fund, on the basis of a payroll including the salary or wages of the injured employee.

The entire scheme provided in the act in our opinion supports the construction above indicated. The only provision which seems susceptible of a contrary construction is that found in § 10 to the effect that the Bureau "shall disburse the workmen's compensation fund to such employees of employers as have paid into the said fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, *wheresoever such injuries have occurred.*" The clause,—"wheresoever such injuries have occurred" must of course be construed in harmony with the other provisions of the law, and the general scheme outlined therein. And when .so construed it does not, in our opinion, evidence any intention on the

50 N. D.—15.

part of the legislature to give the Compensation Act extra-territorial effect, so as to render the Compensation Fund liable for injuries sustained in the course of an employment the situs of which is without the state. It simply means, as we view it, that employees within the act by the tests previously provided, are to be compensated regardless of where the injury occurs, provided it is within the course of their employment.

It is further contended that complication will arise because of the difference in the terms of compensation acts. That is an argument that ought to be addressed to the legislature and really is one in favor of uniform workmen's compensation laws. There are many state statutes which fail, to some extent, of complete protection to the citizens of a state, because the legislation of other states is either different or entirely absent upon the subject. That may be an unfortunate condition, but the courts cannot give unwarranted construction to language or disregard established legal principles in order to prevent it. In view of the fact that laws such as this place a burden upon the consuming public—one which in justice it should bear, however—it may be suggested that when the state protects the citizen in his activities within its borders, or in work which is incidental to activities within its borders, even though outside thereof, it has done all that can reasonably be expected. If the citizen elects to go out of the state, otherwise than as an incident to an employment within its borders, it would seem that he must depend upon the protection of the laws of the jurisdiction into which he voluntarily passes.

It is also urged that it should be immaterial where the injury is inflicted, because the purpose of the law is to insure the employee; it is pointed out that in life or accident insurance, provided by private concerns, it is of no consequence where death or injury occur. This contention is also found in decisions in the states where the compensation acts are optional and, therefore, become integral parts of the contract of hire. As applied to the instant case, the analogy is fallacious and the argument unsound. The fund out of which compensation is paid, under our compulsory law, is created by collecting premiums from persons subject to the act; that fact necessarily limits the field from which the fund may be drawn. The field of private insurance, of course, as far as the collection of premiums to pay the insurance is concerned, is

not limited to any jurisdiction. Moreover, to contend that it is immaterial where the injury occurs—that is, in effect, where the *hazardous employment* is conducted—is not sound from the economic standpoint or consonant with the theory of our compensation law. *In general, the field within which compensable injuries arise should be coterminous with the field within which premiums may be collected in order to create the compensation fund. That is essentially the theory of the compensation scheme.* If the state cannot supervise, regulate or control the employment in the exercise of its police power, it is difficult to see on what theory injuries in such employment should be compensated out of a fund created by levies upon industry in North Dakota, unless the employment beyond the borders be merely an incident to an employment within the state. It is not intended to hold that a person who is injured beyond the borders of the state in service which is incidental to an employment within the state, may not recover under the compensation law. That question is essentially different and is not before us.

This opinion is written upon a rehearing which resulted in the views of the writer being altered and in changing the decision. In accordance with the practice which has long obtained in this court, the previous opinion is not published, though, in courtesy to the author of that opinion, who is not now a member of the court, as we might wish that the practice were otherwise. We are nevertheless indebted to our former associate, Justice Grace, for his earnest consideration of the questions presented.

Judgment reversed and action dismissed.

CHRISTIANSON, and NUESSLE, JJ., and COOLEY, Dist. J., concur.

Mr. Justice JOHNSON, did not participate; Honorable CHAS. M. COOLEY, of the First Judicial District sitting in his stead.

BRONSON, Ch. J. (dissenting). This cause was argued and submitted before this court, as formerly constituted, on September 18th, 1922. Such court on December 6th, 1922, through an opinion of Mr. Justice Grace as indicated in the majority opinion, modified, and then affirmed the judgment of the trial court. All members of the court as then constituted signed the opinion of Mr. Justice Grace excepting Mr.

Justice Robinson who dissented. A rehearing was ordered and had before this court as now constituted. The majority opinion now reverses the previous decision of this court, reverses the judgment of the trial court, and dismisses the action.

In the former opinion of this court a majority of the court who signed the opinion of Mr. Justice Grace stated the following: "The majority agree with the conclusions stated in the syllabi. The majority of this court are of the opinion that the findings of the trial court are entitled to the presumptions that obtain in a trial of a law case to the court without a jury: that the findings of the trial court, to the effect that, upon the evidence, the Workmen's Compensation Act of this state applies to the injuries of the plaintiff received in another state while engaged in the pursuit of an employment and in a business having a situs within this state, find support in the evidence and were not so clearly opposed to the preponderance of the evidence as to require interference therewith by this court."

I adhere to the conclusions heretofore adopted in the previous decision of this court. Practically speaking the previous decision of this court is reversed upon the question of the sufficiency of the evidence. Since the original opinion of this court will not be published I desire to cite the following cases in the original opinion: State ex rel. Maryland Casualty Co. v. District Ct. 140 Minn. 427, 168 N. W. 177; State ex rel. McCarthy Bros. Co. v. District Ct. 141 Minn. 61, 169 N. W. 274; Anderson v. Miller Scrap Iron Co. 169 Wis. 106, 170 N. W. 279, 171 N. W. 935; Douthwright v. Champlin, 91 Conn. 524, 100 Atl. 97, Ann. Cas. 1917E, 512, 15 N. C. C. A. 870; Post v. Burger, 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158, 10 N. C. C. A. 888; Kennerson v. Thames Towboat Co. 89 Conn. 367, L.R.A.1916A, 436, 94 Atl. 372.

On petition for rehearing.

Per Curiam (after further rehearing). The majority of the court adhere to, and adopt the opinion of Mr. Justice Birdzell, heretofore filed, the Honorable Charles M. Cooley sitting in place of Mr. Justice Johnson, disqualified. The Chief Justice adheres to the conclusions set forth in his previous dissenting opinion.