LOUIS OBERG, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(220 N. W. 923.)

Opinion filed August 3, 1928.

*Scott Cameron,* for appellant.

*McGee & Goss,* for respondent.

NUESSLE, Ch. J. This is an appeal from a judgment of the district court of Benson county in favor of the plaintiff and against the defendant Workmen's Compensation Bureau.

The plaintiff was grievously injured by the explosion of some dynamite caps. It appeared he had been employed by some road contractors and was by them required to dispose of the caps. On account of using a defective (instantaneous) fuse the caps prematurely exploded and the injury was incurred. Thereafter plaintiff petitioned the bureau for compensation. The petition was denied. Whereupon he appealed to the district court of Benson county which after trial ordered judgment in his favor. This appeal is from the judgment so entered.

The facts in so far as they are material to the questions here to be determined, may be more fully stated as follows:

Schultz Brothers were a firm of road contractors. In 1926, they had two contracts; one for a road in Benson county near Pleasant Lake, the other in western North Dakota near Williston. It was necessary to do some grubbing and blasting on both these contracts so Schultz Brothers employed one Johnson as their subcontractor to do this work, paying him a lump sum for each job. Johnson in turn employed Oberg who was experienced in the use of explosives. There is some question as to the contract of employment between Johnson and Oberg, but the trial court found, and we think it sufficiently appears to be so from the

evidence, that Oberg was an employee at the agreed compensation of 60 cents per hour. Though he worked under Johnson, he was paid on Johnson's order by Schultz Brothers. It seems that the compensation bureau had had some difficulty in procuring the listing of payrolls of subcontractors under the various road construction contracts and in collecting premiums from them, so the bureau requested that the principal contractors report their subcontractors and list the payrolls of such subcontractors. In accordance with this request and practice on the part of the bureau, Schultz Brothers advised the bureau that Johnson was a subcontractor, that as such he was doing certain grubbing and blasting, listed his payroll, paid the required premium as fixed by the bureau, including that on the payroll for blasting, advised Johnson that this would be and was being done, and charged back against him the amount of the premium then paid for him and his employees.

Johnson and those who worked under and with him on his subcontract, finished the work at Pleasant Lake the first part of June, 1926. When they finished they had on hand some dynamite and fulminating caps used in exploding it. Johnson did not want to carry them with him to Williston. Besides he thought that Schultz Brothers who had yet some grading to do might need them. So he stored them in a garage or scale house near the place where they had been working. One Kjelstrom was also engaged in the work with Johnson, whether as an employee or a subcontractor is here immaterial. Kjelstrom lived with his parents near Pleasant Lake and the plaintiff Oberg chummed with him and became friendly with the family. After the work at Pleasant Lake was completed Johnson, Kjelstrom, Oberg and the others who had been engaged in doing it, went to Williston to do the work there. In August, 1926, before this work was completed, Oberg announced to Johnson that he and Kjelstrom were going to Canada to work during the harvest. The dynamite and caps left by Johnson at Pleasant Lake were still there. Schultz Brothers advised Johnson they would not need them and suggested that they be disposed of. Oberg and Kjelstrom contemplated returning to Pleasant Lake and visiting there on their way to Canada. Johnson knew this so he told Oberg to destroy the dynamite and caps when he went to Pleasant Lake and agreed to pay him for this work one day's wages at 60 cents per hour. Oberg agreed. Oberg and Kjelstrom then returned to Pleasant Lake.

The train on which they took passage did not stop at Pleasant Lake so they got off at Rugby, the nearest point where it did stop. Oberg tarried there for a few days and Kjelstrom went on home. In two or three days he came to Rugby and took Oberg home with him. While Oberg was there on this visit the matter of the dynamite caps came up. One of the Kjelstrom boys and his father had used the dynamite in blasting rocks but the caps were still there—about eighty of them. So a day or two after he arrived at Kjelstrom's, Oberg proposed to destroy the caps. He obtained them for that purpose, disposed of seven of them first and then attempted to explode the remainder. He used a short piece of fuse for this purpose. He lit this and almost instantly the whole box exploded, lacerating his face fearfully and destroying the sight of both his eyes.

It is fair to assume—though that is immaterial—that Oberg might have been careless in the manner in which he handled the caps and that he set them off as he did in order to amuse the others who were there with him by the explosion and consequent noise. In any event, he suffered very serious injury. He not only lost the sight of both his eyes, but was also mentally deranged by the shock. So much so, that in 1927, when this case was tried in the district court he was incapacitated on this account to testify. Petition was made on his behalf to the Workmen's Compensation Bureau for compensation. This petition was denied, the bureau contending, first, that there was no contractual relation of any kind existing between Johnson and Oberg at the time the explosives in question were destroyed and that the act which resulted in the accident was independent of any relationship of employer and employee; and second, that assuming that Oberg was acting under an agreement with Johnson at the time of the accident, he was not an employee but was an independent contractor, and, therefore, was not insured under the compensation fund. Oberg then appealed to the district court. The cause was tried without a jury. The court made findings of fact and conclusions of law favorable to the plaintiff and ordered judgment accordingly. Thereupon the bureau perfected the instant appeal.

It is conceded that if the plaintiff is entitled to recover, the judgment of the district court fixing the amount and extent of his recovery is correct. Thus the only questions on this appeal are those revolving

around the contentions of the bureau that the plaintiff was not an employee of Johnson at the time of the injury and that if he did destroy the caps at the instance of Johnson, he did so as an independent contractor.

Of course the plaintiff in order to recover as against the defendant compensation bureau has the burden of establishing that the injury for which he claims compensation was received in the course of his employment. Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364; Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 350. But the trial court held that the plaintiff had sustained this burden. The findings of the trial court come to us on this appeal presumptively correct. They will not be disturbed unless clearly opposed to the preponderance of the evidence. Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663; Altman v. North Dakota Workmen's Comp. Bureau, 50 N. D. 215, 28 A.L.R. 1337, 195 N. W. 287; Dehn v. Kitchen, supra. In the light of this latter rule, it seems to us that we are not warranted in disturbing the findings and conclusions of the trial court and must affirm the judgment. Owing to the plaintiff's mental incapacity he was unable to offer any evidence on his own account. The character of his employment generally and the facts with respect to what he did in destroying the caps must be ascertained from the testimony of others and from the circumstances as developed in the record. While there are some contradictions and inconsistencies, we are unable to say that the findings as made by the trial court are clearly opposed to the preponderance of the evidence.

The defendant's first contention is that there was no contractual relation of any sort between Oberg and Johnson and that Oberg, in whatsoever he did in the way of destroying the caps, was a volunteer who was merely amusing himself and his friends. There is some room for argument in support of this theory. But, on the other hand, Johnson positively testified that he arranged with Oberg to destroy the caps and agreed to pay him for doing so. Johnson is corroborated in this by the testimony of Kjelstrom who overheard part of the conversation relating to the matter between them. The trial judge who saw and heard these witnesses believed them. Neither are the circum-

stances wholly inconsistent with Johnson's version of the matter. So the evidence is ample to sustain the trial court in this regard.

But the defendant further contends that accepting Johnson's version of the transaction and even though there was a contract between Johnson and Oberg, it was such that Oberg was an independent contractor rather than an employee. The work of blasting at Pleasant Lake was completed early in June. The accident did not take place until August. In the meantime all the parties had left Pleasant Lake and gone several hundred miles to Williston where they were employed on a wholly different job. Oberg quit his employment with Johnson altogether and started on a mission of his own to Canada to work in the harvest fields. Kjelstrom was going with him and they contemplated stopping at Pleasant Lake for a visit. When Johnson learned of Oberg's plans he arranged with him to have the explosives destroyed and agreed to pay him one day's pay or $6 for destroying them. This . work would reasonably require only a few minutes. So the defendant argues that though Oberg was to destroy the explosives under this arrangement with Johnson, yet he was paid a lump sum for doing so, not measured by the time required. Further, that it was left to Oberg to say how he would dispose of the explosives. He might use his own judgment as to whether he would cast them into the lake, bury them, or explode them. Johnson gave no direction as to this but left it to the judgment and discretion of Oberg. It seems to us, however, that these circumstances have to be considered in connection with what had taken place before. The explosives were provided for use in doing the work on the Pleasant Lake contract. When that work was finished the explosives were left on hand. Something had to be done with them. Johnson feared to take them along to Williston. Schultz Brothers did not want them. If Johnson at the conclusion of the Pleasant Lake job had directed that they be destroyed and agreed to pay Oberg extra compensation for doing this, it would not now be arguable that their destruction was not incidental to the employment and that Oberg was not an employee. The mere lapse of time under the circumstances makes no difference. The fact remains that Johnson wanted the caps destroyed. He took advantage of Oberg's visit to Pleasant Lake to have him destroy them. He might have directed Oberg as to how he should proceed, but he did not see fit to do so. Oberg was experienced

in such matters so Johnson left it to him. Nevertheless, Oberg was subject to his direction and control. Under all these circumstances we cannot say that the findings of the trial court to the effect that Oberg was an employee doing something incidental to the blasting operation, are clearly opposed to the proponderance of the evidence. Gotchy v. North Dakota Workmen's Comp. Bureau, supra; Lilly v. Haynes Co-op. Coal Min. Co. 50 N. D. 465, 196 N. W. 556.

The judgment of the district court must therefore be affirmed.

BIRDZELL, CHRISTIANSON, BURKE, and BURR, JJ., concur.