[File No. 5975.]

PETER MacARTHUR, Respondent, v. NORTH DAKOTA WORK-
MEN'S COMPENSATION BUREAU, Joseph A. Kitchen, S.
A. Olsness, W. C. Preckel, W. H. Stutsman and R. E. Wenzel,
as Members of the North Dakota Workmen's Compensation
Bureau, Appellants.

(244 N. W. 259.)

Opinion filed September 7, 1932.

*Thomas J. Burke,* Assistant Attorney General, for appellant.
*Lashkowitz & Smith,* for respondent.

NUESSLE, J.   This appeal is from an order of the district court of Cass county overruling a demurrer to the plaintiff's complaint.

As shown by the allegations of the complaint the plaintiff was a deputy sheriff of Cass county.   In December, 1930, in the performance of his duty as such deputy sheriff, he attempted to arrest a robber.   The robber fled across the Red river into Minnesota.   Plaintiff pursued him.   He sought the aid of the Minnesota officers and while assisting them in apprehending the robber was shot and seriously injured.   He was compelled to incur expense on account of his injuries and was incapacitated for work for a considerable time.   Cass county had complied with the requirements of the Workmen's Compensation Act and the county and the plaintiff were entitled to the protection and benefit of that act.   But there was no special contract for extra-territorial coverage.   Plaintiff duly filed his claim for compensation with the Compensation Bureau.   On December 26, 1930, the bureau denied the claim on the ground that the injuries from which he suffered and on account of which he claimed compensation were not incurred within the state of North Dakota.   On January 24, 1931, plaintiff duly appealed to the District Court of Cass county and thereafter on February 21 served and filed his complaint as required by the statute.   The defendant demurred to the complaint on the ground that the court had no jurisdiction of the subject matter of the action and that the complaint did not state facts sufficient to constitute a cause of action.   The district court overruled the demurrer.   Thereupon the defendant perfected this appeal.

The first question is as to whether, having received the injuries for which he claims compensation outside of the state of North Dakota and there being no special contract for extra-territorial coverage, plaintiff was entitled to compensation under the provisions of the Workmen's Compensation Act then in effect and particularly § 10 thereof (§ 396a10, 1925 Supplement).   The section in question provides:

"The Workmen's Compensation Bureau shall disburse the workmen's compensation fund to such employees of employers as have paid into

the said fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, wheresoever such injuries have occurred, or to their dependents in case death has ensued, and such payment or payments to such injured employees, or to their dependents in case death has ensued, shall be in lieu of any and all rights of action whatsoever against the employer of such injured or deceased employee, *but no compensation shall be paid on account of injuries occurring outside of the state of North Dakota, nor because of death due to an injury occurring outside of the state of North Dakota, unless the employer and the bureau shall have previously contracted for insurance protection for employees while working outside of the state in the employment in which the injury occurred. Provided that no such contract shall be issued to any employer unless his principal plant and main or general office is located in North Dakota and at least two-thirds of whose entire payroll is used or expended for work performed in the state of North Dakota."*

The plaintiff insists that the act should be liberally construed in order to effectuate the purposes thereof. This, of course, is the rule. But where the words of a statute are plain and capable of bearing but one meaning, there is no room for construction and the legislative intent as expressed must be given effect. The section here in question expressly provides that no compensation shall be paid on account of injuries occurring outside of the state of North Dakota unless the employer and the bureau shall have previously contracted for such protection. There was no express contract in the instant case providing for extraterritorial coverage. It seems to us that in the absence of such a contract the compensation fund cannot be held liable on account of injuries incurred outside of the state of North Dakota. There is little room for the contention that no express contract is necessary but that the obligation can and must be implied where the employment without the state, in the course of which the injury was sustained, was incidental to a business within the state. This contention is foreclosed by the wording of the statute. The original act, § 10, chapter 162, Session Laws 1919, was identical with § 396a10, supra, except as to that portion of the latter section thereof set forth in italics which was added by amendment in 1923. Thus the original statute provided that the compensation fund should be disbursed to employees whose employers,

have paid into the fund the premiums applicable "who have been injured in the course of their employment, *wheresoever such injuries have occurred."* The amendment first unequivocally provides that no compensation shall be paid on account of injuries occurring outside the state. This prohibition is clear and certain. Without some exception there could be no question as to its effect. The statute then makes the exception "unless the employer and the bureau shall have previously contracted for insurance protection for employees while working outside of the state in the employment in which the injury occurred." Since the prohibition of the statute is so broad and positive, covering all injuries and forbidding any compensation, it follows that the exception must be by express contract; none can arise by implication. Finally, there is the concluding proviso limiting the cases in which contracts for protection against injuries occurring outside the state may be made. Without this final proviso could there be any question as to the meaning and effect of the statute? Surely not. But the proviso does nothing in the way of enlarging the words which preceded it. It limits rather than enlarges. It restricts and defines the cases in which protection against injuries occurring outside the state may be afforded by contract. Not only do the words of the statute point with certainty to this construction, but aside from the words the history of its enactment and amendments is persuasive to the same effect. The statute as originally enacted was considered and construed in the case of Altman v. North Dakota Workmen's Comp. Bureau, 50 N. D. 215, 195 N. W. 287, 28 A.L.R. 1337. In that case the bureau denied the claim of Altman. On appeal to the district court the action of the bureau was reversed, the claim was allowed, and the plaintiff had judgment. On appeal to this court we held that the act was not intended to have extra-territorial effect so as to render the fund liable for injuries sustained outside the state in the course of an employment not incidental to a business or occupation within the state. But though our holding went no further than this, its reasoning and implication lead to a much wider conclusion. We said:

". . . Moreover, to contend that it is immaterial where the injury occurs—that is, in effect, where the *hazardous employment* is conducted —is not sound from the economic standpoint or consonant with the theory of our compensation law. *In general, the field within which*

*compensable injuries arise should be coterminous with the field within which premiums may be collected in order to create the compensation fund. That is essentially the theory of the compensation scheme.* If the state cannot supervise, regulate or control the employment in the exercise of its police power, it is difficult to see on what theory injuries in such employment should be compensated out of a fund created by levies upon industry in North Dakota, unless the employment beyond the borders be merely an incident to an employment within the state. It is not intended to hold that a person who is injured beyond the borders of the state in service which is incidental to an employment within the state, may not recover under the compensation law. That question is essentially different and is not before us. . . ."

After the judgment in favor of the plaintiff in the Altman case was entered in the district court, while the appeal therefrom was pending in this court and before our opinion therein was handed down, the legislature convened and § 10 was amended. See chapter 350, Sess. Laws 1923, § 396a10, 1925 Supplement, supra. Thus it is plain that this amendment was enacted to relieve the compensation fund from liability on account of any injuries that might be incurred outside of the state of North Dakota by an employee otherwise insured unless extra-territorial coverage was expressly contracted for in advance. Then the instant case arose. Plaintiff's injury out of which it grew was received in December, 1930. His claim for compensation was disallowed on December 26, 1930, on the ground that the injury was sustained outside of the state and that there had been no special contract for compensation in such event. It is at least arguable that the twenty-second legislative assembly which convened in January, 1931, was of the mind that the construction thus put upon the statute by the bureau was correct, for thereafter it enacted chapter 313, Sess. Laws 1931, further amending § 396a10, supra, to read:

"The Workmen's Compensation Bureau shall disburse the Workmen's Compensation Fund to such employees of employers as have paid into the said Fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, wherever such injuries have occurred, or to their dependents in case death has ensued, and such payment or payments to such injured employees, or to their dependents in case death has ensued, shall be in lieu of any

and all rights of action whatsoever against the employer of such injured or deceased employee, but no compensation shall be paid on account of injuries occurring outside of the State of North Dakota, nor because of death due to an injury occurring outside of the state of North Dakota, *unless such employee is an appointive peace officer of any County of this State, receiving injury or meeting with death outside of the State of North Dakota in the course of his employment; or,* unless the employer and the Bureau shall have previously contracted for insurance protection for employees while working outside of the State in the employment in which the injury occurred. Providing that no such contract, with the exception as herein stated, shall be issued to any employer unless his principal plant and main or general office is located in North Dakota, and at least two-thirds of whose entire payroll is used or expended for work performed in the State of North Dakota."

Section 2 of chapter 313, further provides:

"The Workmen's Compensation Bureau is hereby authorized and directed to consider, allow and pay all claims for injuries received by any appointive peace officer of any County of this State outside of the State in the course of his employment and in pursuance of his duties subsequent to July 1st, 1930, and also to consider, allow and pay all claims made by the claimant for injuries occurring outside the State and whose claim was rejected by said Bureau subsequent to July 1st, 1930, and it appears that the full premium applicable to the class to which said claimant belonged for injuries occurring inside the State, was paid into the Fund by the claimant's employer."

It is obvious that the 1931 amendment was enacted to except peace officers, such as the plaintiff was, from the provisions of § 396a10 denying compensation on account of injuries incurred outside of the state. And it just as clearly appears that the legislature when enacting the second section of the act considered that such officers who had incurred injuries prior to the passage of the act could not be compensated out of the fund and made provision for their compensation though their claims had already been denied by the Bureau.

But the plaintiff insists that, in any event, the judgment of the district court must be affirmed because his claim is clearly within the purview of the second section of the 1931 amendment. Though it be

conceded that the claim is within the contemplation of this amendment, nevertheless we are of the opinion that it cannot avail him on the instant appeal. Plaintiff's injury was received in December, 1930. His claim was disallowed by the compensation bureau on December 26, 1930. Notice of appeal from this action of the Bureau was given on January 24, 1931, and the complaint on appeal was served and filed on February 21, 1931. Chapter 313, Sess. Laws 1931, was approved with an emergency clause on March 11, 1931. So the claim when filed was subject to the provisions of § 396a10. At the time it was denied and later when the appeal was taken and perfected, chapter 313 was not in effect. So the compensation bureau had no opportunity to pass upon the claim under the provisions of chapter 313, Sess. Laws 1931, and the ruling was right under the law as it stood when the claim was presented and the ruling was made. The Bureau had exclusive original jurisdiction to pass upon the claim and its decision thereupon was final, subject only to the right of appeal to the district court. See § 396a17, 1925 Supplement; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663; Crandall v. North Dakota Workmen's Comp. Bureau, 53 N. D. 636, 207 N. W. 551. It is clear to us that under the circumstances disclosed the district court on the appeal from the Bureau was limited in its consideration of the appeal to the law as it existed at the time of the bureau's action upon the claim. So the plaintiff could not in the district court, nor can he now on appeal to this court, invoke and rely upon the provisions of chapter 313, Sess. Laws 1931. It follows that the demurrer was good and should have been sustained. The appeal being thus disposed of it is unnecessary to consider the other questions raised.

The order of the district court is therefore reversed and the case is remanded with directions to enter judgment on the demurrer in favor of the defendant but without prejudice to the rights if any the plaintiff has under the provisions of chapter 313, Sess. Laws 1931.

Burr and Burke, JJ., concur.

Christianson, Ch. J. (dissenting). I am unable to agree with the conclusion reached by my associates in this case. The Workmen's Compensation law was enacted to provide "for workmen injured in

hazardous employments and their families and dependents sure and certain relief . . . regardless of questions of fault." Laws 1919, chap. 162, § 1. It applies to the state and all political subdivisions thereof as well as to private employers. Id. § 2. An employee means every person engaged in a hazardous employment under any appointment or contract of hire. Id. § 2. It is conceded that a deputy sheriff is an employee engaged in hazardous employment and, hence, subject to the protection of the act. See Fahler v. Minot, 49 N. D. 960, 194 N. W. 695; Crandall v. North Dakota Workmen's Comp. Bureau, 53 N. D. 636, 207 N. W. 551.

In Altman v. North Dakota Workmen's Comp. Bureau, 50 N. D. 215, 195 N. W. 287, 28 A.L.R. 1337, the question arose whether, or, to what extent, the original act applied to an employment between a North Dakota employer and an employee working without the state. The precise question involved in the case was stated in the opinion therein as follows: "Did the legislature intend that the Compensation Act should operate to insure all persons employed under a North Dakota contract, regardless of where the parties intend the contract of employment to be performed?"

After careful consideration this court reached the conclusion that the act did not "evidence any intention on the part of the legislature to give the Compensation Act extra-territorial effect, so as to render the Compensation Fund liable for injuries sustained in the course of an employment *the situs of which is without the state.*" 50 N. D. 225, 226. The court pointed out the reasons impelling this conclusion, among others being the right of the state to supervise, regulate and control the employment; but it took pains to indicate that there was no intention to hold that an employee in a hazardous employment within the state, would be barred from recovery because he was injured beyond the borders of the state while in the performance of some work incidental to an employment within the state. The court said: "If the state cannot supervise, regulate or control the employment in the exercise of its police power, it is difficult to see on what theory injuries in such employment should be compensated out of a fund created by levies upon industry in North Dakota, *unless the employment beyond the borders be merely an incident to an employment within the state.* It is not intended to hold that a person who is injured beyond the

borders of the state in service *which is incidental to an employment within the state,* may not recover under the compensation law. That question is essentially different and is not before us."

The legislative assembly in 1923 amended and re-enacted § 10 of the original act so as to read as follows:

"The Workmen's Compensation Bureau shall disburse the Workmen's Compensation Fund to such employees of employers as have paid into the said fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, wheresoever such injuries have occurred, or to their dependents in case death has ensued, and such payment or payments to such injured employees, or to their dependents in case death has ensued, shall be in lieu of any and all rights of action whatsoever against the employer of such injured or deceased employee, but no compensation shall be paid on account of injuries occurring outside of the state of North Dakota, nor because of death due to an injury occurring outside of the state of North Dakota, unless the employer and the Bureau shall have previously contracted for insurance protection for employees while working outside of the state in the employment in which the injury occurred. Provided that no such contract shall be issued to any employer unless his principal plant and main or general office is located in North Dakota and at least two-thirds of whose entire payroll is used or expended for work performed in the state of North Dakota." Laws 1923, chap. 350.

It is this enactment which the majority members say precludes the plaintiff from recovery in this action.

It should be borne in mind that the enactment of 1923 amended only one section of the Workmen's Compensation Act. The question is: In what particular was it sought to change the then existing law?

At the time of the enactment of chapter 350, Laws 1923, the North Dakota Workmen's Compensation Act could not be applied to an employment the situs of which was wholly without the state. An individual or corporation whose principal business establishment was in this state, with practically the entire payroll therein, who had some minor establishment or undertaking outside the state, could not obtain coverage in the North Dakota Workmen's Compensation Fund for the employees who were wholly or primarily engaged in the performance

of work outside the state. This brought about a situation making it desirable to amend the act so as to permit the North Dakota Workmen's Compensation Bureau to insure North Dakota employers so as to give them full coverage for employees outside of the state as well as within, subject to the limitations prescribed in the act. In my opinion the legislative assembly had no intention to make any change in the law then existing so far as concerned employments within the state. A deputy sheriff would be engaged in an employment the situs of which is wholly within the state. Any activity on his part outside of the state would be wholly incidental to his employment within the state. Is it reasonable to assume that the legislative assembly, by the amendment which it enacted in 1923, intended to change the rule so as to take away from such employee the protection which he had under the former law? I think not. The language of the statute indicates clearly that what the legislature had in mind was employment the situs of which was without the state. There was no intention to take away from any employee in an employment within the state any protection which he had under the original act.

If, as the majority members say, insurance in a case like this is dependent upon the making of a "special" or "express" contract, then it would be possible and quite likely that in some counties the authorities would make an "express" or "special" contract with the Workmen's Compensation Bureau, so as to afford protection while in others they would not. Even in the same county arrangement might be made for an "express" or "special" contract to protect some and not others. The very uniformity of protection which the statute contemplates for public employees would be wanting. But the statute makes no reference to "express" or "special" contracts. No such term is found in the statute. It says there shall be no compensation paid on account of injuries occurring outside the state nor because of death due to an injury occurring outside the state, "unless the employer and the Bureau shall have *previously contracted* for insurance protection for employees working outside of the state in the employment in which the injuries occurred."

I see no reason why under the terms of the 1923 act the previous contract, to which the statute refers, may not be made in precisely the same manner as contracts are made under the act for insurance against injuries sustained by employees in the course of employment within the

state. If the compensation bureau is fully informed of the nature of the work of an employee, and that work entails in part, as an incident to the employment within the state, the performance of certain duties without the state, with the pay-roll covering the work as an entirety, then it seems to me that there clearly exists a situation where the employer and the Compensation Bureau have previously contracted that the insurance shall cover the entire employment including injuries that may be sustained without the state. It seems to me that when insurance is obtained for an employee who, in the very nature of things, may be required to perform part of his duties outside the state, incidental to the employment within the state, that a contract such as the statute contemplates should be implied. Certainly this would be the rule if we were dealing with a private insurance company and I see no reason why the same rule should not be applicable here. Bordson v. North Dakota Workmen's Comp. Bureau, 49 N. D. 534, 541, 191 N. W. 839, 842.

Inasmuch as the majority opinion is predicated upon the theory that the injuries in question here were sustained in the course of employment,—provided the insurance covers injuries sustained outside of the state,—I have not considered the question whether the injuries were sustained in the course of employment. The members of the legislative assembly, however, as evidenced by their enactment in 1931, were of the mind that the injuries so sustained by a peace officer outside of the state in the discharge of duties arising within the state, would be sustained in the course of his employment (Laws 1931, chap. 313), and it seems to me that this is a reasonable construction. It seems that an officer who, in the conscientious discharge of his duties, continues to follow an offender against the laws of this state, whom he is seeking to apprehend, into an adjoining state, is pursuing rather than deviating from, or abandoning, his line of duty.

BIRDZELL, J. (dissenting). We are all agreed that under § 10 of the original compensation law the plaintiff in this case would have had a valid claim against the compensation fund, provided only that he was injured in the course of his employment, and we are not holding in this case that he was not injured in the course of his employment. In view of the 1931 amendment it should not be so held.

The doubt as to the validity of the plaintiff's claim arises wholly out of the 1923 amendment to § 10 (§ 396a10, 1925 supplement) wherein the legislature declared that no compensation should be paid on account of injuries occurring outside the state, unless the employer and the Bureau shall have previously contracted for insurance protection for employees while working outside the state. The majority of the court considers this as making the sole test whether or not the injury occurred outside the state and as eliminating the question as to whether the employee at the time was engaged in a work incidental to his employment within the state. It must be conceded that there are strong reasons for this construction. But in view of the fact that the amended act holds forth the possibility of insuring employees while working outside the state, it seems to me that the question resolves to this: Does the contract of insurance actually made cover the employee while temporarily beyond the borders of the state pursuant to an employment within the state? I do not agree with the majority opinion in holding that there must be some *special* contract previously made concerning such a temporary and incidental absence. The law says nothing about a *special* contract. I do not believe the law contemplates the splitting of the pay-roll upon which the full premium is based in anticipation that part of it may be paid for services rendered while beyond the borders of the state, and there is in the law no other basis than pay-roll and risk upon which to fix a premium. I am of the opinion that when a premium is fixed and insurance effected, based upon the entire compensation or pay-roll, existing and anticipated, there is a previous contract for insurance protection for employees while doing work outside the state which is merely incidental to an employment within the state. I think the employer and the Bureau in this case made the only contract they could have made covering the employee in question and that they had therefore "previously .contracted" for coverage while such employee was working in the capacity of a peace officer wheresoever his duties called him.