[File No. 6725.]

MRS. FLORENCE MOUG, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(297 N. W. 129.)

Opinion filed March 27, 1941.

*Alvin C. Strutz,* Attorney General, *Milton K. Higgins* and *Lynn G. Grimson,* for appellant.

*Francis Murphy* and *S. W. Hagan,* for respondent.

CHRISTIANSON, J. This is an appeal from a judgment in a proceeding under the Workmen's Compensation Act. The proceeding was instituted by Florence Moug, surviving widow of Earl Moug, to recover compensation for the death of her husband pursuant to the provisions of the Workmen's Compensation Act of this state. Laws 1919, chap. 162, as amended. Earl Moug died on November 26th, 1938, as a result of injuries which he sustained on that day near the village of Page in this state. At the time of his death, and for some two years prior thereto, Earl Moug was clerk of the school board in School District No. 110 in the vicinity of Ayr. On November 26th, 1938, and for the two preceding days, said Earl Moug had been engaged with four other men in painting a schoolhouse within said School District. After his death his widow, the plaintiff Florence Moug, applied to the Workmen's Compensation Bureau for compensation for herself and for her minor children, claiming that the said Earl Moug sustained the injuries which resulted in his death in the course of his employment, as an employee of said School District No. 110. The claim was rejected by the Workmen's Compensation Bureau and the plaintiff thereupon duly appealed to the district court from the decision of the Bureau.

In the district court the plaintiff filed a petition wherein she alleged that she was the wife of said Earl Moug at the time of his death and that she and two minor children, issue of said marriage, were dependent upon him for support. She further alleged:

"On the 26th day of November, 1938, the said Earl Moug was employed by School District Number 110, Ayr, North Dakota, a public corporation, and a political subdivision of the state of North Dakota,

and as such employee was entitled to all the benefits of the Workmen's Compensation Fund, pursuant to § 162 of the 1919 Session Laws, and acts amendatory thereof.

"That on the 26th day of November, 1938, the said Earl Moug while engaged in the duties of his said employment, and in the course thereof, working as a painter for said School District painting the schoolhouse, was required as a part of his said duties to make a trip to town to purchase paint and materials in and about said duty of painting said schoolhouse, and that while on said trip, and in the course of his said employment, was struck and injured by a railroad train, from which injuries he died.

"That the wages received by said decedent, Earl Moug, in such employment was the sum of $2.50 per day, amounting to $15 per week."

The petition, also, alleged the presentation of the claim to the Workmen's Compensation Bureau and the denial thereof and appeal by the plaintiff to the district court from such disallowance.

The Workmen's Compensation Bureau interposed an answer wherein, among other things, it specifically denied that Earl Moug at the time of his injuries and death was an employee of the School District, and alleged that the death of said Earl Moug was not due to injuries arising in the course of his employment nor to any disease proximately caused thereby.

A hearing was had in the district court at which witnesses were sworn and testified. The district court rendered judgment in favor of the plaintiff, and the Workmen's Compensation Bureau has appealed to this court and demanded a trial anew.

The evidence discloses that Earl Moug was a farmer residing in School District No. 110 in the vicinity of Ayr, North Dakota. On November 26th, 1938, he was the clerk of said School District and had been such for a period of about two years prior thereto.

The School Board had agreed to have the interior of the schoolhouse painted during the time intervening Thanksgiving Day and the following Monday. Two of the directors, Bailey and Anderson, Moug, the Clerk, and two patrons of the School District, Brock and Hull, were to do the work. It does not appear that any definite compensation was agreed upon, but each of the persons who performed the work was paid $5. On Saturday, November 26th, the persons mentioned were en-

gaged in painting. They did not have sufficient paint, and Moug drove to Page twice that day for additional paint. Toward evening it became apparent that they did not have sufficient paint to finish the job and Anderson told Moug to get additional paint if he went into town that evening. About 5 o'clock Moug left for Page, driving his automobile; one Hull, who had assisted in the painting, went with him. They left the schoolhouse between 5 and 6 o'clock; when they arrived in Page they found the hardware store, where the paint was to be purchased, closed, and they started home. When they reached Hull's home Moug said: "I believe I'll go back to town. Will you come and go with me?" Hull answered in the negative, and remained at home. Moug did not say for what purpose he was going back to town. There is no testimony as to what Moug did from that time on. There is no testimony at all as to the circumstances of his death. His wife testified that he was killed in an automobile accident at a railroad crossing, and that he was going to town but that she did not know on what business he was going; that a cousin of her husband, one Rutherford, was with him at the time of his death; that she did not know what time the accident occurred; that she was not notified of his death until about 1 or 2 o'clock that night; that the last time she saw him before his death was when he left home on the morning of November 26th to go to work; that she did not see him on his way to town. There is no testimony as to what hour he was killed or where he was going or any of the circumstances—there is merely the bare statement that he was killed in an automobile accident at a railroad crossing. Whether the accident occurred at 7 or 8 o'clock in the evening or at 10 or 12 o'clock at night does not appear. Neither does the evidence show whether Moug obtained the paint. The testimony does show, however, that Anderson's son did go to town and that he purchased the required paint at the hardware store at Page where Moug was to procure it, some time between 8:15 and 8:30 o'clock in the evening of November 26th.

Appellant assails the judgment on several grounds. Among others, that the evidence is insufficient to establish the existence of a claim payable out of the Workmen's Compensation Fund. Some of the assignments of error involve legal questions which depend upon the existence of a certain state of facts. As we read the evidence it wholly fails to establish the fundamental fact that the injury from which Earl

Moug died was sustained by him in the course of any employment with the School District; and hence the questions of law that depend upon the proposition that there is substantial evidence tending to establish the fact that the injury which caused Earl Moug's death was sustained by him in the course of his employment may not properly be determined on this appeal. Appellate courts determine only matters actually before them on the appeal and will not give opinions upon controversies as to the meaning or effect of constitutional or statutory provisions, or declare principles of law, that are dependent upon a state of facts not proven.

The Workmen's Compensation Act provides for compensation only for "an injury arising in the course of employment." Laws 1919, chap. 162, §§ 2, 10; O'Leary v. North Dakota Workmen's Comp. Bureau, 62 N. D. 457, 243 N. W. 805.

"The words 'in the course of' employment have reference to the time, place, and circumstances of the accident resulting in the injury for which compensation is claimed. . . . 'An accident befalls a man *in the course of* his employment if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time to do that thing.' . . . The Massachusetts court in McNicol's Case, 215 Mass. 497, 102 N. E. 697, L.R.A.1916A, 306, 4 N. C. C. A. 522, said: 'An injury is received *in the course of* the employment when it comes while the workman is doing the duty which he is employed to perform.' " O'Leary v. North Dakota Workmen's Comp. Bureau, supra.

Plaintiff's claim is predicated upon the proposition that Earl Moug was the clerk of the School District and that he, with others, was employed by the School District to paint the schoolhouse and that in either or both of these capacities he went to the village of Page to obtain additional paint and was killed while in the performance of such work. The basis for the claim that Moug was performing any service in the course of his employment by the School District is that he left the schoolhouse between 5 and 6 o'clock in the evening of November 26th and drove his car to Page for the purpose of obtaining some additional paint; that when he arrived at Page the store where the paint was to be purchased was closed; that he thereupon left town and drove to the

home of one Hull who had accompanied him to town; that he reached Hull's place some time between 6:30 and 7 o'clock that evening, and that he then stated that he believed he would go back to town, and asked Hull to accompany him; that Hull declined to do so, and that Moug thereupon drove away; that some time thereafter between 7 o'clock Saturday evening and 1 or 2 o'clock Sunday morning, he was killed at a railroad crossing. What Moug had been doing between the time that he left Hull's house and the time he was killed does not appear. The evidence does not show whether Moug called at the hardware store for the purpose of obtaining the paint, but it does show that one Anderson did obtain the required paint from the store at Page some time between 8:15 and 8:30 o'clock that Saturday evening. The evidence does not show the distances of travel involved, but apparently they were not very great because, as said, Moug and Hull left the schoolhouse between 5 and 6 o'clock in the evening, went to town, stayed there for some time, and were back at Hull's home between 6:30 and 7 o'clock that evening.

This evidence viewed in the light most favorable to the plaintiff fails to establish that when he met his death at a railroad crossing at some unspecified time between 7 o'clock in the evening (when he left Hull's house) and 1 or 2 o'clock the next morning (when the plaintiff was informed of his death), Moug was engaged in procuring paint, or in any other work, for the School District. The plaintiff had the burden of establishing that the injury resulted in Earl Moug's death, and on account of which compensation is claimed, was incurred in the course of his employment. "The burden of showing that the injury which resulted in death was received in the course of the employment is upon the claimant and an award should not be made upon mere surmise and conjecture." Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 350; Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364; Oberg v. North Dakota Workmen's Comp. Bureau, 57 N. D. 189, 220 N. W. 923; O'Leary v. North Dakota Workmen's Comp. Bureau, 62 N. D. 457, 243 N. W. 805, supra. What Moug was doing at the time he was injured, when and in what circumstances the injuries were sustained, are matters of mere speculation and conjecture. Certain it is there is no evidence showing that he sustained such injuries while he was performing some service for the School District or engaged in any

activity in which the School District was interested. This is not a case where the party was prevented from introducing evidence. The record discloses that all evidence offered by the plaintiff was admitted, and we must assume that the plaintiff introduced all available material evidence tending to establish her right to recover. This is not a case where there is a mere defect in the proof arising through oversight, or misunderstanding of the issues; there is a total absence of proof of the existence of the very foundation of the right of action. As we view the case, as disclosed by the record on this appeal, there is no reasonable probability that plaintiff could establish a right to recover if another trial were had; hence, the judgment is reversed and it is ordered that the proceeding be dismissed.

BURR, Ch. J., and MORRIS, NUESSLE, and BURKE, JJ., concur.